**NO. 14-1048(L)**
**No. 14-1049**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**GLADYS GARDNER,**

Individually on Behalf of All Persons Similarly Situated,

**Plaintiff-Appellant,**

**v.**

**GMAC, INC.,**

now known as Ally Financial Inc.

**Defendant and 3rd Party Plaintiff-Appellee**

**v.**

**MANHEIM REMARKETING, INC.**

**Third Party Defendant.**

_____

*Appeal from the United States District Court for the
District of Maryland
Case No. 1:10-cv-01094 (Hon. J. Frederick Motz)*

_____

**BRIEF OF DEFENDANT-APPELLEE
ALLY FINANCIAL, INC.**

_____

Robert A. Scott                     Martin C. Bryce, Jr.
Glenn A. Cline                      Ballard Spahr LLP
Ballard Spahr LLP                   1735 Market Street, 51st Fl.
300 East Lombard St., 18th Fl.      Philadelphia, PA 19103
Baltimore, MD 21202                 Telephone: 215-665-8500
Telephone: 410-528-5600             Facsimile: 215-864-8999
Facsimile: 410-528-5650

*Attorneys for Appellee*

Dated: June 18, 2014

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

I.    COUNTERSTATEMENT OF ISSUES PRESENTED ................................1

II.   COUNTERSTATEMENT OF THE CASE ....................................................1

    A.    FACTS RELEVANT TO THE ISSUES SUBMITTED FOR
        REVIEW .............................................................................................1

        1.    Gardner's Vehicle Purchase, Payment History and
            Repossession ...............................................................................1

        2.    Scott's Vehicle Purchase, Payment History and
            Repossession ...............................................................................3

        3.    "Facts" About the Putative Class ................................................5

    B.    PROCEDURAL HISTORY RELEVANT TO THE ISSUES
        SUBMITTED FOR REVIEW ...............................................................6

    C.    RULING PRESENTED FOR REVIEW ...............................................9

III.  SUMMARY OF ARGUMENT ....................................................................9

IV.   ARGUMENT ...........................................................................................13

    A.    THE DISTRICT COURT DID NOT ERR IN FOLLOWING
        THIS COURT'S UNPUBLISHED DECISION IN *BEDIAKO* .........13

        1.    Gardner's and Scott's Cases are Carbon Copies of
            *Bediako* ...................................................................................13

        2.    Any Factual Differences Between *Bediako* and This Case
            are Non-Material Such that *Bediako* is Apposite ....................21

    B.    GARDNER AND SCOTT ARE ENTITLED TO NO
        FURTHER RELIEF .............................................................................24

        1.    There is No Basis for an Order Prohibiting GMAC from
            Seeking Deficiency Judgements ...............................................24

i

2.      There is No Basis for an Order Prohibiting GMAC from Holding Gardner and Scott Responsible for Their Deficiencies in Order to Prevent GMAC from Offsetting Against Gardner's and Scott's Unpaid Principal Balances When Determining Whether They Were Damaged..................27

3.      Gardner's and Scott's Claims Were Dismissed, Not Mooted, and Should Not Have Been Remanded ......................30

4.      Gardner and Scott are Not Entitled to Civil Penalties Under CLEC, Recovery Of "Amounts Collected Post-Repossession," Actual Damages or Nominal Damages ...........35

C.      THE DISTRICT COURT DID NOT ERR IN REFUSING TO ORDER NOTICE TO PUTATIVE CLASS MEMBERS ..................44

V.    CONCLUSION................................................................................50

CERTICATE OF COMPLIANCE WITH RULE 28.1(E)/32(A) ...........................51

CERTIFICATE OF SERVICE .................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bediako v. Am. Honda Fin. Corp.*,
2013 WL 3943183 (4th Cir. Aug. 1, 2013) ................................................passim

*Berry v. Pierce*,
98 F.R.D. 237 (E.D. Tex. 1983) ........................................................48

*Burks v. Arvest Bank*,
No. 4:06-cv-00551, 2006 WL 3512478 (E.D. Ark. 2006) ................................49

*Cruz v. Amer. Airlines, Inc.*,
356 F.3d 320 (D.C. Cir. 2004)........................................................44

*Epps v. JPMorgan Chase Bank, N.A.*,
No. 10-1504, 2012 WL 5250538, (D. Md. Oct. 22, 2012).....................19, 34, 38

*Farmers Coop. Co. v. United States*,
90 Fed. Cl. 72 (2009) ........................................................45

*Keller v. United States*,
58 F.3d 1194 (7th Cir. 1995) ........................................................25

*Laventhall v. Gen. Dynamics Corp.*,
91 F.R.D. 208 (E.D. Mo. 1981), *aff'd*, 704 F.2d 407 (8th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 150 (1983)........................................48, 49

*Leist v. Tamco Enterprises, Inc.*,
No. 80-civ-4439, 1984 WL 2425 (S.D.N.Y. Apr. 3, 1984)................................48

*Martin v. Clemson University*,
654 F. Supp. 2d 410 (D.S.C. 2009) ........................................................21

*Meyer v. Berkshire Life Ins. Co.*,
372 F.3d 261 (4th Cir. 2004) ........................................................25

*Pa. Nat'l. Mut. Casualty Ins. Co. v. Roberts*,
668 F.3d 106 (4th Cir. 2012) ........................................................25

*Pan American World Airways, Inc. v. U.S. District Court for the Central District of Cal.*,
    523 F.2d 1073 (9th Cir. 1975) .................................................................46

*Rhon Prods., Intern., LLC v. Sofitel Capital Corp. USA, Inc.*,
    No. 06-0504, 2010 WL 681304 (D. Md. Feb. 22, 2010)...................................25

*Ross v. Fed. Deposit Ins. Corp.*,
    625 F.3d 808 (4th Cir. 2010) ...............................................................20

*Rothman v. Gould*,
    52 F.R.D. 494 (S.D.N.Y. 1971) ............................................................48

*Scott v. Nuvell Fin. Serv. LLC*,
    789 F. Supp. 2d 637 (D. Md. 2011)....................................................22, 29

*Scott v. Nuvell Fin. Serv., LLC*,
    No. 09-3110, 2010 WL 1710151 (D. Md. Apr. 23, 2010) .................................29

*Shelton v. Pargo, Inc.*,
    582 F.2d 1298 (4th Cir. 1978) ........................................45, 47, 48, 49

*Simmons v. United Mortgage & Loan Investment, LLC*,
    634 F.3d 754 (4th Cir. 2011) .........................................................31, 33

*Stewart v. Cheek & Zeehandelar, LLP*,
    252 F.R.D. 384 (S.D. Ohio 2008)..........................................................33

*United States v. Delfino*,
    510 F.3d 468 (4th Cir. 2007) ...............................................................44

*Winston v. Stewart Title & Guaranty Co.*,
    920 F. Supp. 2d 631 (D. Md. 2013)..................................................31, 33

## STATE CASES

*Berg v. Byrd*,
    124 Md. App. 208 (1998) ...................................................................19

*C. Phillip Johnson Full Gospel Ministries, Inc. v. Invest. Fin. Serv.*,
    12 A.3d 1207 (Md. 2011) ...................................................................29

iv

*Citaramanis v. Hallowell*,
  328 Md. 142 (1992) ...........................................................................19

*Commissioner of Financial Regulation v. Frank J. Ward, III, et al.*,
  No. CFR-FY2010-418 (Nov. 26, 2013) ...................................................passim

*Frazier v. Castle Ford, Ltd.*,
  200 Md. App. 285 (2011), *rev'd on other grounds*, 430 Md. 144 (2013)....18, 43

*Gardner v. Ally Fin. Inc.*,
  61 A.3d 817 (Md. 2013) .......................................................7, 29, 30

*McGraw v. Loyola Ford, Inc.*,
  124 Md. App. 560 (1999) ...........................................................19

*Patton v. Wells Fargo Fin. Md., Inc.*,
  437 Md. 83, 85 A.3d 167, 170 (2014) .......................................29, 30

*Scott v. Ford Motor Credit Co.*,
  691 A.2d 1320 (Md. 1997) ...........................................................26

**FEDERAL STATUTES**

15 U.S.C. § 1692k(a)(2).................................................................17

28 U.S.C. § 1447(c) .......................................................................31

Fair Credit Reporting Act. ...........................................................20

Fair Debt Collection Practices Act .............................................17

**OTHER STATUTES**

Com. Law § 2-725 .......................................................................26

Com. Law § 12-1018 .................................................................passim

Com. Law § 12-1019 ...................................................................30

Com. Law § 12-1021 .................................................................passim

Com. Law § 13-408(a) ............................................................18, 19

**RULES**

Fed. R. Civ. P. 23 ...............................................................................passim

Fed. R. Civ. P. 28.1(e)/32(a) ..................................................................51

Fed. R. Civ. P. 68 ....................................................................11, 31, 33

**OTHER AUTHORITIES**

Charles A. Wright et al., Federal Practice and Procedure § 1785.3 (3d ed. 2005) .................................................................................................5

Charles Alan Wright et al., Federal Practice and Procedure § 1788 (3d ed. 1999) ...............................................................................................45

I.    **COUNTERSTATEMENT OF ISSUES PRESENTED**

      1.    Did the District Court correctly hold that Appellants Gladys Gardner and Randolph Scott ("Gardner and Scott") were not entitled to relief under the Closed-End Credit Grantor Provisions ("CLEC") (Count I), a breach of contract theory (Count II), the Declaratory Judgment Act (Count III), a restitution or unjust enrichment theory (Count IV) or the Consumer Protection Act (Count V) after having received allegedly defective vehicle repossession notices where Gardner and Scott: (i) suffered no actual loss and (ii) have each failed to repay over $11,000 in principal obtained from Appellee Ally Financial Inc. ("GMAC") to finance the purchase of their vehicles?

      2.    Was the District Court correct in refusing to order GMAC to send notices to putative class members alerting them to GMAC's alleged violations of law where no class had been certified, Gardner's and Scott's claims had been involuntarily dismissed and Gardner and Scott failed to demonstrate any prejudice to the putative class?

II.    **COUNTERSTATEMENT OF THE CASE**

    A.    **FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW**

        1.    **Gardner's Vehicle Purchase, Payment History and Repossession**

Gardner purchased a 2006 Chevy Impala from Jerry's Chevrolet in July 2006 pursuant to a retail installment sale contract ("RISC").  JA107 (Gardner

Compl. ¶ 12). The RISC provided that it was governed by CLEC. JA107, JA131 (Gardner Compl. ¶ 13; Ex. 1 to Gardner Compl. at 2). The principal amount of credit extended was $38,355.75. JA220, JA130 (Declaration of Lynda Zitka ("Zitka Decl.") ¶ 5; Ex. 1 to Gardner Compl. ("Amount Financed" box)). The RISC obligated Gardner to make 72 monthly payments (through July 2012) of roughly $532. JA130 (Ex. 1 to Gardner Compl. (payment schedule)).

Jerry's Chevrolet assigned the RISC to GMAC, Inc., now known as Ally Financial, Inc. JA107 (Gardner Compl. ¶ 15).[1]

Between August 2006, when her first payment was due, and September 2009, Gardner made 38 payments totaling $19,177.56. JA221 (Zitka Decl. ¶ 7). Gardner did not make any payments on her RISC after September 2009. *Id.*

Gardner's Impala was repossessed on November 11, 2009,[2] JA221 (Zitka Decl. ¶ 9) and was sold at a sale on January 5, 2010 JA108 (Gardner Compl. ¶ 18). The proceeds of the sale totaled $7,700. JA221, JA136 (Zitka Decl. ¶ 10;

---

[1]     For the convenience of the Court, Appellee Ally Financial, Inc. will refer collectively to itself, Nuvell National Auto Finance LLC and Nuvell Financial Services, LLC using the same name employed in Gardner's and Scott's brief, i.e., "GMAC."

[2]     Gardner's Complaint mistakenly indicates that her vehicle was repossessed in ***2008***, one year prior to when it was actually repossessed. JA107-JA108 (Gardner Compl. ¶ 16).

Ex. 4 to Gardner Compl.). If all of Gardner's payments were allocated to her principal balance and she was given principal balance credit for the proceeds of the sale of her vehicle, the remaining unpaid principal balance on her RISC would be $11,478.19 (i.e., principal amount financed ($38,355.75) minus total payments made by Gardner ($19,177.56) minus total sale proceeds ($7,700) equals $11,478.19). JA221 (Zitka Decl. ¶ 13).

When Gardner's account was terminated on GMAC's active account management system, GMAC used a series of internal accounting entries (e.g., "PRIN-PAID," "FIC-PAID," LC-PAID," and "OTHER PAID") to "zero out" Gardner's account and to credit her for a "GAP" insurance policy[3] refund. JA597 (Zitka Decl. ¶ 6). GMAC did this before it loaded Gardner's account information into another account management system for accounts in default. JA597 (Zitka Decl. ¶ 6). Gardner did not make any payments on her RISC after her vehicle was repossessed. JA596-JA597 (Zitka Decl. ¶ 5).

### 2. Scott's Vehicle Purchase, Payment History and Repossession

Scott purchased a 2007 Mitsubishi Galant from Antwerpen Mitsubishi in November 2007 pursuant to a RISC. JA044 (Scott First Amended Compl.

---

[3] A gap policy protects a borrower in the event his or her vehicle is destroyed and the amount he or she owes on vehicle-secured extension of credit exceeds the value of the vehicle. JA597 (Zitka Decl. ¶ 7).

("FAC") ¶ 12).  The RISC provided that it was governed by CLEC.  JA044, JA066 (Scott FAC ¶ 13; Ex. 1 to Scott FAC).  The principal amount of the credit extended was $23,534.44.  JA220, JA063 (Zitka Decl. ¶ 6; Ex. 1 to Scott FAC ("Amount Financed" box)).  The RISC obligated Scott to make 72 monthly payments of $540.11.  JA063 (Ex. 1 to Scott FAC (payment schedule)).

Antwerpen Mitsubishi assigned the RISC and its servicing rights to Nuvell National Auto Finance LLC and Nuvell Financial Services LLC (collectively, "Nuvell").  JA044 (Scott FAC ¶ 15).

Between January 2008, when his first payment was due, and September 2008, Scott made 13 payments totaling $3,951.80 (including partial payments and separately-assessed fee payments and excluding returned payments).  JA221 (Zitka Decl. ¶ 8).  Scott did not make any payments on his RISC after September 2008.  JA221 (Zitka Decl. ¶ 8).

Scott's Galant was repossessed on February 20, 2009, JA221 (Zitka Decl. ¶ 11) and was sold at a sale on March 31, 2009, JA044 (Scott FAC ¶ 16-17).  The proceeds of the sale totaled $8,600.  JA221, JA068 (Zitka Decl. ¶ 12; Ex. 3 to Scott FAC).  If all of Scott's payments were allocated to his principal balance and he was given principal balance credit for the proceeds of the sale of his vehicle, the remaining unpaid principal balance on his RISC would be $10,982.64 (i.e., principal amount financed ($23,534.44) minus total payments made by Scott

4

($3,951.80) minus total sale proceeds ($8,600) equals $10,982.64).  JA221-JA222

(Zitka Decl. ¶ 14).

Just as it did with Gardner's account, GMAC used a series of internal

accounting entries to "zero out" Scott's account after it was terminated from the

active account management system.  JA597 (Zitka Decl. ¶ 6).  And, like Gardner,

Scott did not make any payments on his RISC after his vehicle was repossessed.

JA596-JA597 (Zitka Decl. ¶ 5).

### 3.    "Facts" About the Putative Class

Gardner's and Scott's brief (the "Opening Br.") includes lengthy and

detailed discussions of the damages allegedly suffered by members of the putative

class.  (Opening Br. at 12-14.)  However, no class has been certified, and GMAC

moved for summary judgment only as to Gardner's and Scott's individual claims,

not those of putative class members.  *Cf.* 7B Charles A. Wright et al., Federal

Practice and Procedure § 1785.3 (3d ed. 2005) (explaining that Fed. R. Civ. P. 23

"recognizes that there may be many valid reasons justifying the deferral of the

initial certification decision, including that the opposing party may prefer to win

dismissal or ***summary judgment as to the individual plaintiffs***.") (emphasis

added).  Accordingly, facts about the putative class were irrelevant to GMAC's

motion for summary judgment and are not relevant to this appeal.

Moreover, Gardner and Scott significantly overstate the extent and value of the putative class members' alleged damages.  GMAC supplied Gardner and Scott with up-to-date data on the putative class members on August 20, 2013. (This data was contained in spreadsheets Bates-labeled ALLY938 and NUVELL174.)  But instead of relying on this data, Gardner and Scott rely on spreadsheets produced on November 15, 2010 and February 11, 2011, which, because of the breadth of their requests, included data on consumers who are not part of the putative class by Gardner's and Scott's own definition.  (*See* Gardner Doc. No. 110, GMAC's Summ. J. Reply Br. at 3, n.4.)  The most recent spreadsheets show that the alleged damages of putative class members are a fraction of the $13 million claimed by Gardner and Scott.  (*See* Opening Br. at 11.) Moreover, Gardner's and Scott's method of calculating damages has no foundation in CLEC.

### B.      PROCEDURAL HISTORY RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW

Scott filed his Complaint on September 24, 2009 in the Circuit Court for Baltimore County, Maryland, and Nuvell removed the case to the U.S. District Court for the District of Maryland on November 20, 2009.  JA008 (Doc. No. 1). Scott filed a First Amended Complaint on December 22, 2009.  JA041 (Scott FAC).  On April 30, 2010, Gardner filed her Complaint against GMAC in the U.S. District Court for the District of Maryland.  JA104 (Gardner Compl.).  Both

Gardner and Scott claim that after the sale of their vehicles, their lender sent them a post-sale notice that did not comply with CLEC.  JA111, JA048 (Gardner Compl. ¶ 28.; Scott FAC ¶ 28).  Specifically, Gardner and Scott claim that the notice failed to state the name and address of the purchaser of the vehicle, the number of bids sought and received at the sale and the condition of the vehicle at the time of sale. JA111, JA048 (Gardner Compl. ¶ 28.; Scott FAC ¶ 28.)

The Gardner and Scott cases were not consolidated by the District Court, but they were decided by the same judge, proceeded on parallel tracks, and were always jointly briefed.  In both cases, the District Court granted Appellees' first motion for summary judgment on June 7, 2011, ruling that the sales of Appellants' vehicles were not subject to the notice requirements alleged in the Complaints because they were "public" sales, not "private" sales.  JA016, JA034 (Doc. No. 91; Doc. No. 62).  On appeal, this Court consolidated the two cases and certified questions of law to the Maryland Court of Appeals, asking that the Court of Appeals determine whether the sales were "public" or "private."  (Case No. 11-01708, Doc. No. 77)  The Court of Appeals of Maryland determined that the sales at issue were "private" sales subject to the notice requirements at issue in the Complaints.  *Gardner v. Ally Fin., Inc.*, 61 A.3d 817 (Md. 2013).  Accordingly, this Court reversed the judgments of the District Court on March 25, 2013, and remanded the cases for further proceedings.  (Case No. 11-01708, Doc. No. 84)

Thereafter, the U.S. District Court again granted summary judgment in favor of the GMAC on December 31, 2013, relying on this Court's decision in *Bediako v. Am. Honda Fin. Corp.*, 2013 WL 3943183 (4th Cir. Aug. 1, 2013), and holding that Gardner and Scott suffered no compensable damages under CLEC because a principal balance remained due from each of them even after the proceeds of the sales, all payments, and all collected interest and fees were credited to the original principal balance.  JA657 – JA661; JA662.  On December 31, 2013, the District Court also denied Appellants' motions to certify additional questions to the Maryland Court of Appeals and to order notice to the putative class under Fed. R. Civ. P. 23(d).  *Id.*

Gardner and Scott timely appealed from the judgments of the District Court, and this Court again consolidated the cases on February 4, 2014.  (Case No. 14-1048, Doc. No. 12)  Dissatisfied that the District Court refused to certify questions to the Maryland Court of Appeals, Gardner and Scott filed in this appeal a Motion to Certify Question of Law to the Court of Appeals of Maryland on May 19, 2014, which GMAC opposed on June 2, 2014.  (Case No. 14-1048, Doc. Nos. 32, 36)

8

**C.    RULING PRESENTED FOR REVIEW**

Presented for review in this appeal are the District Court's entry of summary judgment in favor of GMAC and the District Court's denial of Gardner's and Scott's motion to order notice to the putative class pursuant to Fed. R. Civ. P. 23(d).

**III.    <u>SUMMARY OF ARGUMENT</u>**

In *Bediako v. Am. Honda Fin. Corp.*, a panel of this Court, which included retired Supreme Court Justice Sandra Day O'Connor, held that a named plaintiff who suffered the same alleged injuries and asserted the same claims as Gardner and Scott had no actionable damages compensable under Maryland law stemming from an alleged repossession notice violation. Critical to this holding was the fact that, even if the plaintiff were given credit for all of the statutory penalties (under CLEC) and damages to which she might be entitled, she would still owe the creditor who financed the sale of her vehicle (and who repossessed it when she defaulted) a few thousand dollars. Because there was no scenario under which the plaintiff would be entitled to an affirmative recovery, the panel dismissed her claims based on a lack of any real damage. Gardner and Scott are in the same boat, as their cases are a carbon copy of *Bediako*. (Gardner and Scott are actually in a worse position than the plaintiff in *Bediako*, as they would each owe

over $11,000 in principal if every payment they ever made was allocated to the principal amount they borrowed to finance their vehicles.)

In their 57-page, prolix brief, Gardner and Scott go to great lengths to attempt to distinguish their case from *Bediako*. They claim that the defendant in *Bediako* did not violate the law. But it is clear that the panel assumed otherwise in reaching its decision on damages, and whether or not the defendant violated CLEC is irrelevant to the damages analysis in any event. Gardner and Scott also claim that the defendant in *Bediako* did not collect fees and charges from the plaintiff after the repossession as GMAC did. But the reverse is true. The defendant in *Bediako* collected amounts after repossession from the plaintiff in that case, while GMAC collected nothing from Gardner and Scott.

Gardner and Scott also claim that *Bediako* is distinguishable on the ground that the plaintiff in that case dropped her claim for declaratory relief and they have not. Gardner and Scott seek two declaratory rulings—one barring GMAC from going to court and obtaining deficiency judgments against them and another barring GMAC from continuing to hold them responsible for the roughly $11,000 they each owe. (They seek the latter so that GMAC does not get credit for their interest payments as applied against their principal balances). As to the first form of declaratory relief, there is no need for it because GMAC waived its right to seek deficiency judgments against Gardner and Scott in the District Court as the

District Court recognized (just as the defendant in *Bediako* did). And, even if

GMAC had not done so, it is now barred from seeking deficiency judgments by

operation of law (through the running of the statute of limitations on GMAC's

claims). Moreover, this declaratory relief is not available under CLEC where, as

here, the sale was private.

      As to the order barring GMAC from continuing to hold Gardner and

Scott liable for the $11,000 in principal they each owe, there is no reading of

CLEC under which they would be entitled to such relief. (As a practical matter,

GMAC has no intention of actively collecting these deficiencies. However, should

GMAC ever be ordered to provide relief to Gardner and Scott or putative class

members, it would seek to offset any such relief against their deficiencies.)

      A significant portion of Gardner's and Scott's brief focuses on

GMAC's waiver of the right to seek deficiency judgments against them. They

claim this waiver was an effort to unfairly pick them off as class representatives

and worked to improperly moot their claims. In support, Gardner and Scott cite

cases in which the defendants offered either full economic relief (without a

judgment) or a judgment (under Rule 68) to named plaintiffs in an effort to avoid

class liability. But GMAC has offered neither. Gardner and Scott have no legally

cognizable claims under CLEC or any other Maryland law because they have no

ascertainable damages and GMAC agreed not to seek deficiency judgments against

them. Consequently, the District Court dismissed their claims. GMAC did not

moot them. As such, Gardner and Scott are just like the plaintiff in *Bediako* whose

claims were found to legally deficient because she suffered no damages. Because

their claims are deficient rather than moot, Gardner and Scott are not entitled to

have them dismissed without prejudice.

   Gardner's and Scott's final damages-related argument is that they are

entitled to a refund of any amounts (other than principal payments) GMAC

collected from them before and after the repossession and to breach of contract and

nominal damages. They claim that they may recover all pre-repossession

payments that GMAC allocated to interest and fees under a recent decision by the

Maryland Commissioner of Financial Regulation interpreting a statutory damages

provision similar to the one at issue in this case. But they ignore how, in that

decision, the Commissioner treated borrowers in foreclosure differently from those

who were not. There is no dispute that Gardner and Scott have essentially been

foreclosed upon. Just like the borrowers in foreclosure in Commissioner's

decision, Gardner and Scott are merely entitled to a credit for any statutory

damages toward their deficiencies and not to a cash payout for these amounts

(especially when they come nowhere close to offsetting these deficiencies).

   Gardner and Scott are not entitled to the refund of any post-

repossession amounts because they paid none. They are not entitled to breach of

contract or nominal damages because, to the extent they exist, these damages would be dwarfed by the deficiencies they still owe.

Gardner and Scott conclude their brief by essentially arguing that GMAC should have helped opposing counsel solicit replacement class representatives by providing putative class members with notice of GMAC's alleged violations of law.  However, Fed. R. Civ. P. 23(d) and cases interpreting it do not permit such notice where, as here, no class has been certified and there is no evidence of prejudice to putative class members.  The District Court was well within its discretion when it refused to order such notice.

## IV.   <u>ARGUMENT</u>

### A.   **THE DISTRICT COURT DID NOT ERR IN FOLLOWING <u>THIS COURT'S UNPUBLISHED DECISION IN *BEDIAKO*   </u>**

#### 1.   <u>**Gardner's and Scott's Cases are Carbon Copies of *Bediako***</u>

A panel of this Court previously considered the same exact claims and issues raised in this appeal in *Bediako v. Am. Honda Fin. Corp.*, 357 Fed. App. 183, 2013 WL 3943183 (4th Cir. 2013).  The panel, which consisted of Justice O'Connor and Judges Wynn and Diaz, held that the CLEC and CLEC-related claims of a plaintiff who received an allegedly defective repossession notice failed as a matter of law (under CLEC, the Consumer Protection Act and otherwise) because the plaintiff never repaid the principal amount of her extension of credit. *See* 357 Fed. App. at 186-87.  (She was short by $3,500 by the panel's calculation.

*Id.*)  Gardner and Scott assert the same causes of action and seek the same relief

despite their not having come close to paying back their principal balances.  After

giving Gardner and Scott principal balance credit for all the payments they made

and the proceeds from the sales of their vehicles, they still each owe roughly

$11,000 in principal—over three times what Bediako owed.[4]  The District Court

correctly determined that Gardner's and Scott's cases are carbon copies of *Bediako*

and that *Bediako*'s reasoning should control the outcome of these cases.

        Gardner and Scott sought relief pursuant to three provisions of CLEC.

The first, § 12-1018(a)(2), sets forth the penalty for negligent CLEC violations:

"Except for a bona fide error of computation, if a credit grantor violates any

provision of this subtitle the credit grantor may collect only the principal amount of

---

[4]     GMAC does not concede that Gardner's and Scott's payments should be
allocated exclusively to principal when calculating damages under CLEC.
First, under the RISCs that Gardner and Scott executed, GMAC had the right
to apply payments to unpaid interest before principal.  JA131, 065 (Ex. 1 to
Gardner Compl. at ¶ 1.b; Ex. 1 to Scott FAC at ¶ 1.c.)  Additionally, CLEC
does not require a creditor in violation of the law to apply interest and fees
collected before a violation to the debtor's unpaid principal balance or
otherwise forfeit these amounts.  Instead, it prospectively bars a creditor
from collecting interest or fees ***after*** a violation occurs.  *Compare* Com. Law
§ 12-1018(a)(2) (providing that a creditor that violates the law "***may collect
only*** the principal amount of the loan and may not collect any interest, costs,
fees…") (emphasis added) *with* Com. Law § 12-1018(b) (providing that
such a creditor "***shall forfeit*** to the borrower" excess fees and interest)
(emphasis added).  Nevertheless, for purposes of its Motion for Summary
Judgment, GMAC assumed a violation of CLEC and, pursuant to *Bediako*,
applied all of Gardner's and Scott's payments to principal.

the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Com. Law § 12-1018(a)(2). The second, § 12-1018(b), sets forth the penalty for a knowing violation of CLEC: "[A] credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of interest, fees, and charges collected in excess of that authorized by this subtitle." Com. Law § 12-1018(b). And the third, § 12-1021(k)(4), sets forth an additional penalty for violations of CLEC's repossession provision, § 12-1021: "If the provisions of this section, [i.e., § 12-1021,] including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." Com. Law § 12-1021(k)(4). Subsection (k)(1) of § 12-1021(k) explains, however, that this additional penalty for repossession-related violations is limited in scope to certain public sales: "The provisions of this subsection[, i.e., subsection (k),] apply to a *public sale* of property which secured a loan in excess of $ 2,000 at the time the loan was made." Com. Law § 12-1021(k)(1) (emphasis added).

        In *Bediako*, this Court interpreted these penalty provisions and additionally elaborated on the extent to which these penalties (and/or CLEC violations) can form the basis of other causes of action. Bediako purchased a vehicle pursuant to a RISC that elected to be governed by CLEC. *Bediako*, 2013

WL 2943183, at *1.  The principal amount of her extension of credit was $16,234.75, and she made payments to Honda totaling $4,308.72 before defaulting. *Id*. at *3, n.1.  Honda repossessed her vehicle, sold it for $7,900 and received three post-repossession payments from Bediako totaling $375.  *Id*.

Bediako alleged that the repossession notices that Honda sent her and putative class members violated CLEC, and she asserted claims against Honda for "declaratory judgment, breach of contract, restitution, unjust enrichment, violations of CLEC and violations of Maryland's Consumer Protection Act."  *Id*. at *1.  In her Complaint,[5] Bediako sought the return of all sums paid as interest, costs, fees or other charges; three times the interest, costs, fees and other charges collected in excess of that allowed by CLEC; an order barring Honda from collecting the principal amount of her extension of credit; and an order requiring Honda to notify credit reporting agencies that she had a zero balance and that her credit had not been charged off.  JA226 (Ex. B, Bediako's Compl. at 15).

After Judge Titus dismissed all of Bediako's claims because she suffered no actual damages, *see* 850 F. Supp. 2d 574,586 (D. Md. 2012), Bediako appealed to this Court.  This Court affirmed, reasoning that a plaintiff, like Bediako, who has not paid even the principal balance on her extension of credit has

---

[5]     A copy of Bediako's complaint can be found in the Joint Appendix at JA223.

no claim for damages under § 12-1018.  *Bediako*, 2013 WL 3943183, at *3.  This

Court further explained that the penalty provisions in § 12-1018 do not come into

play unless and until the debtor has paid back more than he or she has borrowed:

> Section 12–1018(a)(2), by its plain terms, limits a
> debtor's relief under CLEC to any ***amounts paid in
> excess of the principal*** amount of the loan. As the district
> court aptly noted, all of Bediako's payments, plus the
> amount Honda Finance recovered in the private sale of
> her automobile, fall far short of the original principal
> amount of the loan.  Unlike the Fair Debt Collection
> Practices Act, which, as Bediako notes, provides for
> statutory damages as long as the claimant can establish a
> violation, 15 U.S.C. § 1692k(a)(2), ***CLEC does not
> provide for any fixed statutory damages beyond the
> plaintiff's actual loss. To the contrary, CLEC section
> 12–1018(a)(2) expressly permits creditors to recover the
> principal amount of a loan***. Accordingly, Bediako has
> no right to monetary relief under section 12–1018(a)(2).

*Id.* (emphasis added).  Because Bediako borrowed roughly $16,000 and had paid

back roughly $12,500 (including the proceeds from the sale of her vehicle), she

still owed about $3,500 to Honda.  *Id.* at *3, n.1.  Accordingly, this Court held that

she was not entitled to any relief under § 12-1018.[6]

---

[6]     This Court did not directly address Bediako's claim for treble damages
under § 12-1018(b), other than by affirming the district court's dismissal of
Bediako's CLEC claims.  Because Bediako never paid in excess of the
principal she owed, Honda did not collect interest, fees or other charges "in
excess of that authorized by [CLEC]," Com. Law § 12-1018(b).  As such,
there was nothing to be trebled.  Likewise, neither Gardner nor Scott would
be entitled to treble damages under § 12-1018(b).

This Court next addressed Bediako's claim that she should not be liable for a deficiency pursuant to § 12-1021(k)(4).  The Court concluded that this provision "applies only to notice violations with respect to *public* sales…."  *Id.* (emphasis added).  It does not apply in the case of a private sale, such as the one at which Bediako's vehicle was sold.  *Id.*  The Court also noted that Bediako could not "salvage her suit by relying on a potential award of nominal damages" because Maryland courts have consistently refused to allow such damages in consumer protection cases that require actual damages.  *Id.* (citing *Frazier v. Castle Ford, Ltd.*, 200 Md. App. 285, 296 (2011), *rev'd on other grounds*, 430 Md. 144 (2013)).

Finally, this Court held that Bediako's request for equitable relief lacked merit because Honda had abandoned any claim for a deficiency judgment against Bediako.[7]  *Bediako*, 537 Fed. App. at 187.

The panel did not expressly address Bediako's Consumer Protection Act ("CPA") claim.  However, it affirmed Judge Titus' dismissal of this claim based on a failure to allege actual damages.  This is consistent both with the plain language of the CPA, which provides relief only "for *injury or loss* sustained by [a plaintiff]," Com. Law § 13-408(a) (emphasis added), and with case law

---

[7]    Honda abandoned its claim to a deficiency during oral argument before Judge Titus on Honda's motion to dismiss.  *See Bediako*, 850 F. Supp. 2d at 577.

interpreting the CPA.  *See, e.g., McGraw v. Loyola Ford, Inc.*, 124 Md. App. 560, 581 (1999) ("[A] failure to 'establish the nature of the actual injury or loss that [a consumer] has allegedly sustained as a result of the prohibited practice' is fatal to a private cause of action under the Act.") (alteration in original) (quoting *Citaramanis v. Hallowell*, 328 Md. 142, 152 (1992)); *Berg v. Byrd*, 124 Md. App. 208, 215 (1998) ("[I]njury or loss is a prerequisite for a claim brought under CL § 13-408(a)."). It is also consistent with Judge Nickerson's decision in *Epps v. JPMorgan Chase Bank, N.A.*  *See* No. 10-1504, 2012 WL 5250538, at *4-5 (D. Md. Oct. 22, 2012) (holding that plaintiff alleging CLEC violations did not state a claim under the CPA where she failed to allege that she suffered any actual loss).

This Court ultimately affirmed the district court's judgment, which dismissed all of Bediako's claims with prejudice.

It is hard to imagine how the cases at bar could be more similar to *Bediako*.  Gardner and Scott, like Bediako, purchased vehicles pursuant to RISCs subject to CLEC, stopped making payments, lost vehicles to repossession and allegedly received repossession notices that violated CLEC.  Gardner and Scott, also like Bediako, never paid their creditor more than they originally borrowed, even after allocating the proceeds for the sales of their vehicles and all of their payments to principal.  (Bediako was $3,500 short and Gardner and Scott are each roughly $11,000 short.)  Gardner and Scott have asserted the exact same claims as

19

Bediako—claims for violations of CLEC and derivative claims for CPA violations, breach of contract, restitution, unjust enrichment and a declaratory judgment. Finally, Gardner and Scott seek the exact same relief as Bediako, including the return of all interest and fees paid and an order prohibiting GMAC from collecting the principal amounts of their extensions of credit.[8]

The facts of Gardner's and Scott's cases are indistinguishable from those of Bediako's. Accordingly, *Bediako*'s analysis applies with equal force to Gardner's and Scott's claims. Neither Gardner nor Scott has suffered an actual loss. That is, they have not claimed any damages apart from those available under CLEC, and the CLEC damages they seek are not available given the huge gap between what they borrowed and what they paid. Unless *Bediako* was wrongly decided—which it was not—the District Court's decision granting GMAC summary judgment should be affirmed.[9]

---

[8]     As discussed in more detail *infra*, GMAC abandoned any claims it may have had for deficiency judgments against Gardner and Scott.

[9]     To the extent that Gardner and Scott argue that GMAC's credit reporting is somehow inaccurate and in need of correction due to a CLEC violation, the case law in the Fourth Circuit is clear that such a claim may not be brought under state law and must instead be brought under the federal Fair Credit Reporting Act. *See Ross v. Fed. Deposit Ins. Corp.*, 625 F.3d 808, 812-813 (4th Cir. 2010) (holding that state law claims involving erroneous credit reporting are preempted by the FCRA).

### 2. Any Factual Differences Between *Bediako* and This Case are Non-Material Such that *Bediako* is Apposite

Despite the fact that *Bediako* is directly on point and strongly counsels dismissal of their case, Gardner and Scott relegate any detailed discussion of the case to the back half of their brief. (*See* Opening Br. at 36-39.) When they do finally confront the case, they do not argue that it was wrongly decided. (*Id.*) Rather, they assert that *Bediako* is distinguishable from this case based on a series of non-material factual differences.[10]

First, Gardner and Scott claim that *Bediako* is distinguishable because the repossession notice in that case "fully complied" with CLEC and, as such, was not deceptive and misleading like the notices sent by GMAC. (Opening Br. at 37.) This claim is belied by the *Bediako* panel's analysis. The panel expressly held that its damages holding was premised on the assumption that Bediako stated a claim for an actual violation of CLEC: "**[E]ven if Bediako has adequately alleged a violation**, she is unable to state a claim because she has suffered no actual damages

---

[10]    Gardner and Scott also assert that the District Court erred in characterizing the *Bediako* decision as "binding." (Opening Br. at 19, n.12.) While it is true that an unpublished Fourth Circuit decision is not binding precedent, such a decision can be highly instructive, particularly where, as in *Bediako*, the panel's analysis is thorough and detailed. *See, e.g., Martin v. Clemson University*, 654 F. Supp. 2d 410, 417 (D.S.C. 2009) ("Although Plaintiff is correct that unpublished opinions do not constitute binding precedence, unpublished opinions can be persuasive when they address questions currently before the Court.").

that are compensable under CLEC." *Bediako*, 2013 WL 3943183, at *4 (emphasis added).  In connection with this claim, Gardner and Scott also suggest that the CLEC violations alleged in this case are more egregious than those alleged in *Bediako* because GMAC (unlike the creditor in *Bediako*) went out of its way to "conceal" the private nature of the sales and to deceive consumers.  (Opening Br. at 37.)  This is an exaggeration and is immaterial in any event.  Judge Motz initially held that GMAC's sales were public such that GMAC's repossession notices were not inaccurate or deceptive.  *See Scott v. Nuvell Fin. Serv. LLC*, 789 F. Supp. 2d 637 (D. Md. 2011).  Although the Maryland Court of Appeals did not agree with Judge Motz, the conflicting holdings demonstrate that CLEC is far from clear on this point.  At a minimum, the conflict shows that GMAC had a good faith argument that its sales were public.  As such, its alleged violations of CLEC cannot be characterized as egregious.[11]  In light of the foregoing, there is no merit to the assertion that *Bediako* is inapposite because the credit grantor in that case "fully complied" with CLEC or engaged in a violation of CLEC that was less egregious than the one at issue in this case.  In any event, whether GMAC's alleged violation of CLEC could be considered more egregious in some way has no impact on the

---

[11]    Nor could they possibly be characterized as criminal as Gardner and Scott suggest.  (*See* Opening Br. at 20, n.14.)

damages analysis under *Bediako*, and Gardner and Scott cannot demonstrate otherwise.

Next, Gardner and Scott claim that *Bediako* is distinguishable because the credit grantor in that case did not collect "other charges" from Bediako in addition to principal after repossession.  (Opening Br. at 37-38.)  As discussed at length *supra*, GMAC in this case has not collected any such amounts.  More fundamentally, Gardner and Scott are flat out wrong about this point.  Bediako made actual post-repossession-notice payments totaling $375.  *Bediako*, 2013 WL 3943183, at *3 n.1 ("After accounting for the proceeds of the sale ($7,900) ***and her subsequent payments*** ($375), at least $3,701.03 of principal remains….") (emphasis added).  Moreover, contrary to Gardner's and Scott's positions, the *Bediako* panel did not hold that these actual payments entitled Bediako to any relief under § 12-1018.

Gardner and Scott also claim that the alleged delay in GMAC waiving its right to deficiency judgments somehow undercuts *Bediako*'s applicability. (Opening Br. at 38.)  There is no apparent reason why this would matter, and Gardner and Scott do not explain why it should.

Finally, Gardner and Scott note that Bediako dropped her claim for declaratory relief and they have not.  (*Id*. at 38-39.)  But, as discussed at length *infra*, Gardner and Scott are not entitled to a declaration that their deficiency

balances are satisfied under CLEC.  Accordingly, the absence of the claim for

declaratory relief does not somehow render *Bediako* irrelevant.

In sum, *Bediako* is not distinguishable from the case at bar.  The

District Court did not err in relying on it or in finding that its reasoning dictated the

entry summary judgment in favor of GMAC.

## B.    GARDNER AND SCOTT ARE ENTITLED TO NO FURTHER RELIEF

### 1.    There is No Basis for an Order Prohibiting GMAC from Seeking Deficiency Judgements

Gardner and Scott argue that, once the Maryland Court of Appeals

held that their vehicles were sold at private sales (such that GMAC's public sale

notices violated CLEC), Gardner and Scott were entitled to a judgment barring

GMAC from filing a deficiency judgment action against them under § 12-

1021(k).[12]  (Opening Br. at 25-26.)  They claim that GMAC's abandonment of its

right to seek deficiency judgments is not a substitute for this relief.  (*Id*.)  However,

any order granting Gardner and Scott such relief would be superfluous because

GMAC is already barred from seeking any deficiency judgments.

---

[12]    This provision of CLEC states as follows: "If the provisions of this section [i.e., the repossession section], including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement."  § 12-1021(k)(4) (emphasis added).

First, as Gardner and Scott concede, GMAC waived its right to seek deficiency judgments against them in the District Court.  (*See* Opening Br. at 17-18.)  Moreover, the District Court recognized this waiver.  *See* JA658.  Such a waiver has a preclusive effect on GMAC.  *See Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 261 (4th Cir. 2004) (explaining that a "judicial admission" is "a representation that 'unless allowed by the court to be withdrawn, is conclusive in the case.'" (quoting *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995)); *Rhon Prods., Intern., LLC v. Sofitel Capital Corp. USA, Inc.*, No. 06-0504, 2010 WL 681304 (D. Md. Feb. 22, 2010) ("A judicial admission is a representation that unless allowed by the court to be withdrawn, is conclusive in the case.").

Second, under binding Fourth Circuit precedent, GMAC would be judicially estopped from ever taking the position in the future that Gardner and Scott may be pursued for deficiency judgments.  *See Pa. Nat'l. Mut. Casualty Ins. Co. v. Roberts*, 668 F.3d 106, 117 (4th Cir. 2012) ("If a litigant assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (citations and quotations omitted).

Finally (and perhaps most critically), ***GMAC is already barred by law from pursuing a deficiency judgment against Gardner and Scott*** under the four-

year statute of limitations set forth in Com. Law § 2-725 applicable to contract actions on contracts for sales.[13]  *See Scott v. Ford Motor Credit Co.*, 691 A.2d 1320, 1321 (Md. 1997) (holding that a four year statute of limitations applied to a creditor seeking to collect a deficiency under an installment sale agreement involving a vehicle).  Moreover, the *Bediako* panel held that, under these same circumstances, federal courts lack authority to award declaratory relief.  *See Bediako*, 2013 WL 3943183, at *4 (explaining that, since the defendant had waived any claim for a deficiency judgment and any such claim would have been time barred, "the federal courts lack authority…to issue declaratory relief.").[14]

---

[13]    Gardner's and Scott's deficiencies came into existence on the dates their vehicles were sold, which was March 31, 2009 in the case of Scott, JA044-JA045 (Scott FAC ¶ 17) and January 5, 2010 in the case of Gardner, JA108 (Gardner Compl. ¶ 18).  Accordingly, the four-year statute of limitations ran as to Scott's deficiency on March 31, 2013 and as to Gardner's deficiency on January 5, 2014.

[14]    Gardner and Scott were never entitled to a judgment barring GMAC from seeking a deficiency judgment under CLEC since their vehicles were sold at private sales.  While § 12-1021(k)(4) provides that a credit grantor who violates the repossession provisions of CLEC is barred from seeking a deficiency judgment, the first provision of subsection (k), i.e., subsection (k)(1), limits this relief to violations involving ***public sales***: "The provisions of this subsection apply to a ***public sale*** of property which secured a loan in excess of $ 2,000 at the time the loan was made."  § 12-1021(k)(1) (emphasis added); *see also Bediako v. Am. Honda Fin. Corp.*, 2013 WL 3943183, at *3 (concluding that § 12-1021(k)(4) "applies only to notice violations with respect to public sales…").  Gardner and Scott trumpet in their brief the fact that the Maryland Court of Appeals held that their sales were private, not public, sales.  (*See* Opening Br. at 16 ("The Maryland

(continued...)

26

Given that GMAC is barred (for multiple reasons) from seeking deficiency judgments against Gardner and Scott, they have attained the relief provided for under § 12-1021(k)(4). As such, any court order awarding the same would be superfluous, unnecessary and a waste of judicial resources.

> **2.      There is No Basis for an Order Prohibiting GMAC from Holding Gardner and Scott Responsible for Their Deficiencies in Order to Prevent GMAC from Offsetting Against Gardner's and Scott's Unpaid Principal Balances When Determining Whether They Were Damaged**

Gardner and Scott argue that they are entitled to a judgment under § 12-1021(k) of CLEC barring GMAC not just from seeking deficiency judgments against them, but also from collecting any portion of the $11,000 in deficiencies they each owe. (*See, e.g.,* Opening Br. at 27 ("Plaintiffs' position is that because CLEC bars the remedy of a deficiency judgment, there is no right to collect the deficiency….").)

In advancing their deficiencies argument, Gardner and Scott seek to preclude GMAC's right of offset by asserting that these deficiencies simply disappear under CLEC, clearing the way for the return of all interest and fee

---

(...continued)

    Court of Appeals held…that the sales were private under CLEC.").) Since CLEC's deficiency judgment bar applies only to violations in connection with public sales and Gardner's and Scott's vehicles were sold at private sales, Gardner and Scott are not entitled to an order barring GMAC from seeking deficiency judgments against them.

payments and corresponding inflated recoveries.  There is no support in the law for this position.  If § 12-1021(k) applied to private sales like those at which Gardner's and Scott's vehicles were sold, it would only prevent GMAC from seeking deficiency *judgments*.  It would not bar GMAC from holding Gardner and Scott responsible for their deficiencies.

GMAC does not mean to suggest here that it plans to undertake collection efforts against Gardner and Scott to collect any deficiencies.  Rather, GMAC is being clear about a subtle distinction that is dispositive as to some of Gardner's and Scott's damages claims and that could have significant implications should a class ever be certified in this case.  *Bediako* holds that, to the extent that CLEC plaintiffs (or putative class members) are entitled to recover in connection with an alleged repossession notice violation, such recoveries must be offset against the outstanding balances on their accounts.  *Bediako*, 2013 WL 3943183, at *3 n.1.

As noted *supra*, if a credit grantor fails to comply with the repossession notice requirements in § 12-1021, "the credit grantor shall not be entitled to any *deficiency judgment* to which he would be entitled under the loan agreement."  § 12-1021(k)(4) (emphasis added).  The plain language of this provision is clear that the creditor is barred from seeking a "deficiency judgment," i.e., a court order "in favor of the creditor in case the sale proceeds were

insufficient to satisfy the loan obligation." *See C. Phillip Johnson Full Gospel Ministries, Inc. v. Invest. Fin. Serv.*, 12 A.3d 1207, 1214 n.9 (Md. 2011). Nothing in this provision indicates that the creditor must forgive a ***deficiency*** or treat a deficiency as if it had been paid.

        The prior decisions rendered by this Court, the District Court and the Maryland Court of Appeals quoted from or paraphrased § 12-1021(k)(4) of CLEC. *See Gardner v. Ally Fin. Inc.*, 488 Fed. App. 709, 713 (4th Cir. 2012) ("If a creditor does not comply with the stated requirements, it 'shall not be entitled to any deficiency judgment…'") (quoting § 12-1021(k)(4)); *Scott v. Nuvell Fin. Serv. LLC*, 789 F. Supp. 2d 637, 642 (D. Md. 2011) ("If a credit grantor fails to comply with these notices and disclosure requirements, it 'shall not be entitled to any deficiency judgment…'") (quoting § 12-1021(k)(4)); *Gardner v. Ally Fin. Inc.*, 61 A.3d 817, 825 (Md. 2013) (explaining that, if a creditor fails to follow CLEC's sale requirements, "the creditor may be barred from a deficiency judgment…") (citing § 12-1021(k)(4)); *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 90, 85 A.3d 167, 170 (2014) ("[I]f a lender fails to observe various requirements concerning repossession and notice, the lender is not entitled to a deficiency judgment for the unpaid balance of the loan."); *see also Scott v. Nuvell Fin. Serv., LLC*, No. 09-3110, 2010 WL 1710151, at *1 n.4 (D. Md. Apr. 23, 2010) ("Under § 12–1021(k)(4), '[i]f the requirements of [§ 12–1021] ... are not followed, the credit

grantor shall not be entitled to any deficiency judgment[.]'") (quoting § 12-1021(k)(4)).  None of these cases go so far as to hold that a creditor is barred from otherwise collecting deficiencies after a violation.[15]

Simply put, to the extent CLEC bars anything related to deficiencies, it bars deficiency judgments, not the collection of the deficiencies themselves.

### 3.    Gardner's and Scott's Claims Were Dismissed, Not Mooted, and Should Not Have Been Remanded

Gardner and Scott spend a substantial portion of their brief arguing that GMAC's abandonment of deficiency judgments somehow improperly mooted their claims and constituted an effort to "pick [them] off" as class representatives. (Opening Br. at 21-24, 26-28, 39-43.)  They claim that the District Court "entered a judgment against Plaintiffs on the finding that their claims are 'moot' and that 'no case or controversy exists.'"  (*Id*. at 21.)  They further argue that, under

---

[15]    The Maryland Court of Appeals decisions in this case and *Patton* suggest in *dicta* that a creditor who violates the statute is limited to the proceeds of the sale as satisfaction of the debt.  *Gardner*, 61 A.3d at 823; *Patton,* 437 Md. at 108, 85 A.3d at 181.  This is clearly a case of the Maryland Court being loose in its language, as it cites for support § 12-1021(k)(4), which does not mention satisfaction.  (And, in the case of *Patton*, conflicts with the court's initial description of the statute.  See 437 Md. at 90, 85 A.3d at 170.)  Moreover, § 12-1021 references the concept of "full satisfaction" three times in subsections (l)(4)(i), (l)(4)(ii) and (l)(4)(iii)(2).  But it does not mention it in subsection (k).  Furthermore, if the violation were to operate as a satisfaction of the balance, Scott's suit would be time barred under § 12-1019.  Under this provision, "[a]n action for a violation of this subtitle may not be brought more than 6 months after the loan is satisfied."  § 12-1019.

*Simmons v. United Mortgage & Loan Investment, LLC*, 634 F.3d 754 (4th Cir. 2011) and *Winston v. Stewart Title & Guaranty Co.*, 920 F. Supp. 2d 631 (D. Md. 2013), GMAC's abandonment was insufficient to moot their claims.[16]  And, to the extent their claims have been mooted, they argue the District Court should have dismissed their claims without prejudice under 28 U.S.C. § 1447(c).  (Opening Br. at 43-48.)  Gardner and Scott mischaracterize GMAC's abandonment and the District Court's holding.  Gardner's and Scott's claims have been dismissed because they fail as a matter of law.  They have not been mooted.  Moreover, GMAC has not sought to pick Gardner and Scott off as class representatives by offering them the relief they seek or judgment under Rule 68.

As a preliminary matter, the District Court did not hold that Gardner's and Scott's claims are "moot."[17]  Judge Motz used the term "moot" not to characterize Garner's and Scott's claims but rather to characterize the question of whether to certify the deficiency judgment issue to the Maryland Court of Appeals:

---

[16]    In this regard, Gardner and Scott also assert that they "could submit [judgments barring GMAC from seeking deficiency judgment] to credit bureaus if their accounts are inaccurately reported."  (Opening Br. at 27.)  But, as discussed *supra*, Gardner and Scott would not be entitled to any correction of credit report data reflecting deficiencies since they remain responsible for such deficiencies, though GMAC has waived the right to seek a deficiency judgment.

[17]    Gardner and Scott concede as much, explaining that the District Court "found that Plaintiffs had no claims…."  (Opening Br. at 6.)

> Plaintiffs also request that I certify [to the Maryland
> Court of Appeals] the question of whether defendants are
> prohibited obtaining any deficiency judgment against
> plaintiffs….  As stated above, ***that question is moot*** in
> light of the fact that defendants have made it clear that
> they are not seeking, and do not intend to seek, any
> deficiency judgment against plaintiffs.

JA659 (Slip Op. at 3, n.3).  Judge Motz did write that "no case or controversy"

existed JA658 (Slip Op. at 2), but this was in reference to the deficiency judgment

issue, not to Gardner's and Scott's cases generally.  JA658 (Slip Op. at 2 ("***As to***

***the deficiency judgment issue***, clearly no case or controversy exists….")

(emphasis added)).  Moreover, while Judge Motz did not individually address the

many other claims Gardner and Scott asserted in his opinion,[18] he clearly dismissed

these claims and found them legally deficient.  *See* JA662 (Order of Dec. 31, 2013

(granting GMAC's summary judgment motion which sought dismissal of all of

Gardner's and Scott's claims)).  Accordingly, there is no support for Gardner's and

Scott's assertion that the District Court "entered a judgment against [them] on the

finding that their claims are 'moot' and that 'no case or controversy exists.'"

(Opening Br. at 21.)

---

[18]     As noted *supra*, Gardner and Scott (like Bediako) asserted multiple claims in
their lawsuits, including claims for relief under three provisions of CLEC
(i.e., §§ 12-1018(a)(2), 12-1018(b) and 12-1021(k)(4)), breach of contract,
violations of the Maryland Consumer Protection Act, restitution and unjust
enrichment.  *Compare* JA233-JA237 (Bediako Compl. at 10-14) *with*
JA053-JA060, (Scott Compl. at 13-20) *and* JA116-JA123 (Gardner Compl.
at 13-20).

The cases that Gardner and Scott cite in support of their mootness argument show that they are trying to insert a square peg into a round hole. *Simmons* and *Winston* each involved a defendant seeking dismissal for lack subject matter jurisdiction where the defendant had promised the plaintiff the full economic relief the plaintiff had sought. *Simmons*, 634 F.3d at 761; *Winston*, 920 F. Supp. 2d at 634. Both courts held that, because the relief did not include an offer of judgment, the defendants had not offered the full and complete relief to which plaintiffs asserted they were entitled. *Simmons*, 634 F.3d at 765-66; *Winston*, 920 F. Supp. 2d at 635. As the *Simmons* panel explained, "[f]rom the view of Plaintiffs, a judgment in their favor is far preferable to a contractual promise…" since the defendant could breach its promise to pay plaintiffs and leave plaintiffs with no way of enforcing that promise. *Simmons*, 634 F.3d at 764-65. And, *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384 (S.D. Ohio 2008), from which Gardner and Scott included a block quote of nearly a page in length, involved a defendant providing not just full economic relief but also an offers of judgment under Fed. R. Civ. P. 68.

It is not clear why Gardner and Scott think these cases are in any way apposite to their own. GMAC has not offered Gardner and Scott the economic relief to which they believe they are entitled, and it certainly has not offered them a judgment under Rule 68. GMAC has not promised to refund Gardner and Scott

any interest or fees, has not offered them treble damages and has not wiped away their deficiencies. (GMAC's position is that none of these forms of relief are mandated by CLEC here.) In the absence of such promises, there is nothing with respect to which a judgment is needed. Second, GMAC is not seeking to moot or satisfy Gardner's and Scott's claims. It has sought to have them dismissed, not based on lack of subject matter jurisdiction, but rather on failure to state a claim. That is, GMAC's position is that Gardner's and Scott's claims are deficient, not moot. Finally, as discussed *supra*, there is no need for a judgment in connection with GMAC's abandonment of any deficiency judgment action because GMAC is already barred from seeking such a judgment by, among other things, operation of law.

There is no mootness problem in this case just as there was no such problem in *Bediako*. The *Bediako* panel held that "CLEC does not provide for any fixed statutory damages ***beyond the plaintiff's actual loss***. To the contrary, CLEC section 12–1018(a)(2) expressly permits creditors to recover the principal amount of a loan." *Bediako*, 2013 WL 3943183, at *3; *see also Epps*, 2012 WL 5250538, at *4 (holding that plaintiff could not state a claim for relief under CLEC where, after applying all payments she made to the creditor to her principal balance, she still owed the defendant over $4,000). Stated differently, a necessary element of a CLEC claim is a loss or statutory award that exceeds the principal amount of an

extension of credit. Where, as here, there is no such loss or award, there is no basis for a claim. This flaw is fatal as to Gardner's and Scott's stating claims under CLEC.

Given that Gardner's and Scott's cases were dismissed and not "mooted," it would not have been appropriate for the District Court to remand their cases to state court or dismiss them without prejudice as Gardner and Scott suggest. (Opening Br. at 43-46.) The shortcomings of their claims go to their merits and are not merely jurisdictional.

### 4.    Gardner and Scott are Not Entitled to Civil Penalties Under CLEC, Recovery Of "Amounts Collected Post-Repossession," Actual Damages or Nominal Damages

Without providing any evidentiary or legal support whatsoever, Gardner and Scott claim that they are entitled to four additional forms of damages: (1) the return of all interest, costs, fees and other amounts collected on their loans *after repossession* (Opening Br. at 29-30); (2) the return of all interest, costs, fees and other charges collected on their loans *prior to repossession* (*id.* at 30-34); (3) "actual damages in restitution and unjust enrichment" and under Maryland's Consumer Protection Act for amounts collected on their deficiencies (*id.* at 34-35); and (4) nominal damages for breach of contract under the theory that CLEC's repossession notice provisions were incorporated by reference into Gardner's and Scott's retail installment sales contracts (*id.* at 35-36). The facts of record in this

case do not support the relief requested in items (1) and (3), and there is no reading of the law under which Gardner and Scott would be entitled to the relief set forth in items (2) and (4).

As to item (1) (i.e., the post-repossession payments), Gardner and Scott are wrong on the facts. They claim that, after violating CLEC, GMAC "collected" principal payments, fees and other charges from Gardner and Scott. (*See, e.g.,* Opening Br. at 10 ("GMAC has already collected from Plaintiffs amounts attributable to interest, costs, fees and other charges….For example, nearly three months after the repossession…GMAC's own internal documents show that it collected more than $1,600 on [Scott's] purported deficiency….") (emphasis in original).) However, these claims are not true. As described in more detail *infra*, GMAC has not received from Gardner and Scott any post-repossession payments or payments toward their deficiency balances. JA596 (Zitka Decl. ¶ 5.) Nor has GMAC collected since the repossessions any "interest, cost, fees, or other charges," § 12-1018(a)(2), from Gardner and Scott. (*Id*.) More fundamentally, Gardner and Scott do not claim that they made any such payments or paid any such amounts. Had such payments actually been made, Gardner and Scott would have attached to their summary judgment opposition canceled checks or banking statements reflecting such payments. They did not do this ***because there are no such payments***.

The evidence on which Gardner and Scott rely for their post-repossession collections theory is a series of screenshots of GMAC's account management system showing not payments, but internal accounting entries and account credits.  JA597 (Zitka Decl. ¶ 6).  For example, the thousands of dollars of principal ("PRIN-PAID"), hundreds of dollars of late charges ("LC PAID") and hundreds of dollars of other charges ("OTHER PAID") reflected on these screenshots for Gardner, SEALED JA003-JA007 (Sealed Ex. 6) are not actual payments.  JA597 (Zitka Decl. at ¶ 6.)  They instead reflect accounting entries GMAC used to terminate Gardner's account on its active account management system.  (*Id*.)  (GMAC did this before it loaded Gardner's account information into another account management system for accounts in default.  (*Id*.))  Likewise, the payment that Gardner points to on December 7, 2009 (Opening Br. at 11) was not actually a payment but a refund on a "Gap" insurance policy ***that GMAC initially paid for***[19] protecting Gardner in the event the vehicle was destroyed and the amount Gardner owed on her RISC exceeded the value of her vehicle.[20]  JA597

---

[19]     The cost of this policy was financed (such that GMAC advanced the funds for it) as shown on Gardner's RISC.  JA130 (Itemization of Amount Financed, line 14 (showing $425 paid to third party for "GAP")).

[20]     Gardner and Scott apparently understood that the December 7, 2009 credit was from an insurance refund.  (*See* Opening Br. at 11.)  They nevertheless assert that this credit somehow represented the collection of an "other charge" in contravention of § 12-1018(a)(2).  Gardner and Scott seemingly

(continued...)

(Zitka Decl. at ¶ 7).  The same is true as to the amounts "collected" on Scott's

account shown on Sealed Exhibit 5.  JA597 (Zitka Decl. at ¶ 8).

In sum, Gardner and Scott are not entitled to any relief under § 12-

1018 because they have presented no evidence that they made any post-

repossession-notice payments and have not shown that GMAC collected any such

payments or charged Gardner and Scott any post-repossession-notice fees.  And,

since GMAC "collected" no money from Gardner and Scott on their deficiencies,

Gardner and Scott are not entitled to payment "in restitution and unjust

enrichment" (Opening Br. at 34-35 ) or under the Maryland Consumer Protection

Law for amounts collected on such deficiencies (i.e., item (3) above).  *See Epps*,

2012 WL 5250538, at *4-5, 6 (dismissing plaintiff's Consumer Protection Law and

unjust enrichment claims because she suffered no loss).

Gardner's and Scott's assertion that they are entitled to a refund of all

interest and fees they paid ***before*** the alleged violation (item (2) above), despite the

fact that they owe substantial deficiencies, is premised on the decision in

*Commissioner of Financial Regulation v. Frank J. Ward, III, et al.*, No. CFR-

---

(...continued)

> do not understand that GMAC ***credited*** Gardner's account for the insurance
> refund amount (as required by contract and law).  The refund was not
> reflected as a charge on the account.  *See* JA597 (Zitka Decl. ¶ 7); *see also*
> SEALED JA002 (Sealed Ex. 6 ("GAP ***REFUND*** $35.39")) (emphasis
> added)).

FY2010-418 (Nov. 26, 2013) ("*Ward*"). (Opening Br. at 30-34.) But *Ward* does not instruct that a plaintiff with a large deficiency is entitled to an affirmative recovery of pre-violation payments allocated to interest, costs or fees. Instead, it supports GMAC's position that, to the extent CLEC requires these amounts to be refunded to the consumer, such amounts should credited against the consumer's deficiency.

There were two types of borrowers in *Ward* who the Commissioner determined were entitled to different forms of relief: those who were in foreclosure and those who were not. Gardner and Scott are correct (*see* Opening Br. 32-33) that the Commissioner ordered the defendant in *Ward* to give those borrowers who were ***not*** in foreclosure the option of either (a) receiving a refund of all unlawful interest and fees or (b) having this amount credited to their outstanding balance. JA639 (*Ward* at p. 26, para. G). But the Commissioner did not order the defendant to do the same as to borrowers who were in foreclosure. As to those borrowers, the Commissioner ordered the defendant to dismiss its foreclosure actions, reamortize its loans taking into account the unlawful fees and interest and, as to any loans that remained in default, refile the foreclosure actions with an accurate statement of debt:

> Ward shall dismiss, without prejudice, all pending
> foreclosure actions until such time as there is a re-
> amortization of all affected mortgages where Ward is not
> entitled to collect interest or fees; and Ward can file a

true and accurate statement of debt with the court in connection with the foreclosure;

JA640 (*Ward* at p. 27, para. J)  ***Critically, the Commissioner did not compel the defendant in* Ward *to cut refund checks to borrowers who, after being credited for any unlawful fees and interest, remained in default.*[21]  *Id.*

It is indisputable that, of *Ward*'s two holdings, the one pertaining to borrowers in foreclosure is relevant here.  Gardner and Scott, in fact, have been foreclosed upon in that their vehicles have been repossessed.  Under *Ward*, Gardner and Scott do not have the option of receiving a check for any credits to which they may be entitled.  Instead, *Ward* holds that such credits should be applied to their outstanding principal balance.  *Id.*

The District Court did not note this distinction—it did not have the benefit of briefing on the issue[22]—but it arrived at the same conclusion based on

---

[21]    In their Reply in Further Support of Motion to Certify Question of Law to the Court of Appeals of Maryland (D.E. 38) filed on June 9, 2014, Gardner and Scott argue that borrowers in foreclosure in *Ward* were entitled to the option of receiving a refund of impermissible fees just as borrowers who were not in foreclosure.  This argument ignores the plain language of the *Ward* order and improperly gives ambiguous language in the *Ward* opinion the force of an order.  Under the plain language of the order and opinion, the defendant in *Ward* must (1) reamortize the loans in foreclosure to account for the illegal fees, (2) give those who are no longer in foreclosure as a result of the reamortization the choice between a refund and a credit and (3) refile foreclosure actions against the rest based on accurate interest and fee information.

the fact that the defendant in *Ward* still had a security interest in the collateral and

GMAC does not:

> [T]he difference between *Ward* and this case is that in
> *Ward* the lender still had a security interest in the
> collateral securing the loan.  Here, there no longer is any
> collateral securing the loan made by [Appellees].
> Presumably the doctrine of set-off would preclude the
> unfair, unjust, and inefficient result of requiring a first
> party – who has a valid claim against a second party
> exceeding the amount of any claim that the second party
> has against it – to pay to the second party the amount…of
> the second party's claim, leaving the first party only with
> a lawsuit against the second party if the second party
> does not pay what he owes.

JA658.  Accordingly, the defendants in *Ward* had a means to collect "the principal

amount of the loan."  Here, however, there is no longer any security for the loan, so

GMAC should be permitted to set-off the previously collected interest and fees

against the principal amount still owed.  JA640 (*Ward* at p. 27, para. J).

    The instant case is also distinct from *Ward* because the interest, fees,

and charges collected in the instant case were wholly lawful when first collected

and only became barred by CLEC when the Appellants defaulted on their

payments, resulting in the repossession and sale of the automobiles.  *Ward*, on the

---

(...continued)

[22]    Gardner and Scott raised the *Ward* case for the first time in the District
Court in their Reply in Support of their Motion to Certify Questions of Law
to The Court of Appeals of Maryland.  Accordingly, the *Ward* case is not
addressed in the reply brief filed by GMAC in the District Court.

other hand, involved a situation where the interest and fees were unlawful from the origination of the loans due to violations of broker and lender laws. JA614-JA615. Therefore, the Commissioner had to fashion a remedy for the repayment of the unlawful interest and fees while also requiring the re-amortization of the loans over the length of the term. *Id.* In short, *Ward* involved a situation where the lender-borrower relationship was continuing for the natural term of the loan, so it was appropriate for the Commissioner to provide the borrowers with the option of either a set-off or a payment. The instant case, like *Bediako*, involves the opposite situation. Because of these critical differences, the instant case and *Bediako* are not contradicted by *Ward*.

*Bediako* holds that a plaintiff is only entitled to a refund of such amounts to the extent that they exceed the principal amount of the extension of credit. *Bediako*, 2013 WL 3943183, at *3 n.1. As discussed *supra*, the interest and fees Gardner and Scott paid on their accounts come nowhere close to satisfying the principal balances of their extensions of credit. Gardner and Scott do not (and cannot) demonstrate otherwise. Accordingly, Gardner and Scott are not due any pre-violation interest and fees.

As to the nominal damages sought by Gardner and Scott (item (4)) for GMAC's allegedly having breached its agreement by not adhering to CLEC (Opening Br. at 35-36), liability for such damages does not arise in a consumer

protection case where, as here, actual damages cannot be shown. *See Frazier v. Castle Ford, Ltd.*, 200 Md. App. 285, 296 (2011), *rev'd on other grounds*, 430 Md. 144 (2013) ("[N]ominal damages are not available in an action for fraud…or for a deceptive trade practice under the Consumer Protection Act…."). As the *Bediako* panel explained, "Maryland courts have refused to allow nominal damages in certain consumer protection cases[] requiring proof of actual damages." *Bediako*, 2013 WL 3943183, *3. Even if Gardner and Scott were entitled to nominal damages, any such damages would be overshadowed by the $11,000 deficiencies they each owe.

In conclusion, Gardner and Scott are not entitled to any of the relief they seek under the facts of this case or as a matter of law. [23]

---

[23]    Citing a letter written by GMAC's former counsel regarding a discovery dispute (at JA572), Gardner and Scott repeatedly assert that GMAC has conceded the appropriateness of class certification. (*See* Opening Br. at 4, 12-13, 15-16 and 23-24.) This is patently false. First, Gardner and Scott never filed a motion for class certification and GMAC never had the opportunity to oppose certification. Consequently, the District Court never considered any "concession" by GMAC's former counsel and never determined that this action could be maintained as a class action. It is GMAC's position that none of the requirements of Rule 23 may be satisfied in this matter. In any event, the letter expressly provided that the suitability of class representation remained in issue. JA575 ("Thus, the sole issues that need to be resolved for class certification is what limitations period is appropriate so that the temporal cutoff for the class itself may be established and ***whether the plaintiff is a suitable class representative***.") (emphasis added). As discussed in this section, Gardner and Scott do not have valid claims against GMAC. Accordingly, they are not suitable class

(continued...)

## C.     THE DISTRICT COURT DID NOT ERR IN REFUSING TO ORDER NOTICE TO PUTATIVE CLASS MEMBERS

Gardner's and Scott's closing argument is that the District Court erred in refusing to order a notice to all putative class members informing them that GMAC violated the law and inviting them to intervene.  (Opening Br. at 46-56.) Gardner and Scott claim such notice is permitted under Fed. R. Civ. P. 23(d) and justified because the putative class members "are unaware that the Maryland Court of Appeals has decided that their vehicles were sold at private sales, not public sales, and are unaware of and unable to assert their rights."  (*Id*. at 47.)  There is no justification for notice The District Court's decision to not order notice in this regard should

As a preliminary matter, the District Court's refusal to order notice to putative class members must be reviewed for abuse of discretion.  *See Cruz v. Amer. Airlines, Inc.*, 356 F.3d 320, 328 (D.C. Cir. 2004).  This Court has explained that "a district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law."  *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007).  As discussed

---

(...continued)

representatives.  Furthermore, even if a class could be certified here, it would be limited, under CLEC and *Bediako*, to the small group of borrowers who paid GMAC more than they borrowed.

*infra*, there is no precedent for ordering notice to the putative class members in this case. But even if such notice were somehow defensible, there is no ground for concluding that the District Court acted arbitrarily or relied on erroneous factual or legal premises. Accordingly, its decision should be affirmed.

Rule 23(d) provides in relevant part that a court conducting a class action may issue orders that "require—to protect ***class members*** and fairly conduct the action—giving appropriate notice to some or all class members of:…the members' opportunity…to intervene and present claims or defenses…." Fed. R. Civ. P. 23(d)(1)(B)(iii) (emphasis added). Notably, Rule 23(d) contemplates notice to "class members." *Id*.; *cf. Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1304 (4th Cir. 1978) ("It is the actual certification of the class action…which alone gives birth to the class as a jurisprudential entity.") (citation and quotation omitted). In contrast to another provision of Rule 23, it does not apply to ***putative*** class members. *Compare* Rule 23(d)(1)(B)(iii) *with* Rule 23(g)(3) (providing that "[t]he court may designate interim counsel to act on behalf of a putative class…"). As such, the District Court (at JA660) was correct in concluding that, by its plain terms, Rule 23(d) may not apply where no class has been certified. *See* 7AA Charles Alan Wright *et al*., Federal Practice and Procedure § 1788 (3d ed. 1999) ("[N]otice should not be sent out prior to class certification…"); *Farmers Coop. Co. v. United States*, 90 Fed. Cl. 72, 73 (2009) (explaining that application of

Federal Claims Court analog to Rule 23(d) "always follows class certification and, thus, is premised upon the existence of class members to protect.").

Even if pre-certification notice is permitted under Rule 23(d), there is no support in the law for providing it in this case. Gardner and Scott concede that the sole purpose of the notice they seek is to bring before the court the claims of putative class members. (*See* Opening Br. at 55 ("These individuals should be informed of their rights so they can decide whether to dispute GMAC's illegal collection of millions of dollars from them.").) The Ninth Circuit has held that notice is not appropriate in these circumstances because it effectively circumvents Rule 23's certification process:

> The admitted purpose of the notice in this case is to bring the claims of unnamed members of the plaintiff class before the court. Notice for this purpose usually has been thought to issue only after certification of a class action. Otherwise, by notice and joinder of unnamed members of a possible plaintiff class, a district court could circumvent Rule 23 by creating a mass of joined claims that resembles a class action but fails to satisfy the requirements of the rule. For that reason, ***notice for the purpose of bringing the claims of unnamed members of the plaintiff class before the court may not issue before a class action has been certified***.

*Pan American World Airways, Inc. v. U.S. District Court for the Central District of Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975) (citations omitted). Moreover, if Gardner's and Scott's argument is followed to its natural conclusion, putative class

notice would be required anytime a named plaintiff fails to state an individual claim.

This Court, in *Shelton v. Pargo, Inc.*, has suggested that pre-certification notice might be proper where the named plaintiff settles his or her case individually but only if the settlement is tainted by collusion between the plaintiff and the defendant and will prejudice putative class members relying on the named plaintiff to press their claims. 582 F.2d at 1315. This is not such a case. Gardner and Scott have not voluntarily settled their claims. Instead, the claims have been dismissed because they are legally deficient. Additionally, the collusion and reliance concerns discussed in *Shelton* are not present here. Gardner and Scott have vigorously contested the dismissal of their cases and have in no way colluded with GMAC. Furthermore, Gardner and Scott concede that class members are completely unaware of this action such that there is no danger of putative class members having relied on Gardner and Scott to press class claims on their behalf. (*See, e.g.,* Opening Br. at 47-48 (explaining that the putative class members in this case are "unaware," "have no reason to know" and are "in the dark" about Gardner's and Scott's claims).)[24] And, Gardner and Scott have not presented a shred of evidence demonstrating reliance by putative class members.

---

[24]    It is not clear if this reliance concern is even worth the Court's consideration. As explained in *Shelton*, the "reliance interest is often

(continued...)

In support of this argument, Gardner and Scott cite three old district court decisions: *Berry v. Pierce*, 98 F.R.D. 237 (E.D. Tex. 1983); *Rothman v. Gould*, 52 F.R.D. 494 (S.D.N.Y. 1971) and *Leist v. Tamco Enterprises, Inc.*, No. 80-civ-4439, 1984 WL 2425 (S.D.N.Y. Apr. 3, 1984). These cases are easily distinguished. *Leist* is inapposite because it involved a ***certified*** class and an incapacitated named plaintiff whose claims had not been dismissed. *See* 1984 WL 2425, at \*3 (holding that the class to which notice was to be sent had been certified). *Berry* is of no moment because the plaintiffs in that case had voluntarily settled their claims with the defendant and the court assumed for the purpose of plaintiffs' motion that the class was certifiable. 98 F.R.D. at 239, 241. Likewise, *Rothman* is not relevant because there was a strong suggestion of collusion in that case between the plaintiff and defendant. 52 F.R.D. at 495.

More instructive is the decision in *Laventhall v. Gen. Dynamics Corp.*, 91 F.R.D. 208 (E.D. Mo. 1981), *aff'd*, 704 F.2d 407 (8th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 150 (1983). The defendant in *Laventhall* successfully moved to dismiss the named plaintiff's individual claims. 91 F.R.D. at 210. The plaintiff filed a motion requesting that the court provide notice to the putative class members pursuant to Rule 23(d). *Id.* The court refused. Citing *Shelton*, it held

---

(...continued)

> thought to be so speculative as to warrant little or no consideration…." 582 F.2d at 1315 (citations and quotations omitted).

that the plaintiff had not shown that a lack of notice "would unduly prejudice the ability of absent class members to bring independent actions on their claims, either by limiting the right of absent class members to recover in a subsequent suit, or by encouraging continued reliance by unnamed class members on the activity of named class members on their behalf." *Id*. The Eighth Circuit affirmed the court's decision, 704 F.2d 407, and the Supreme Court denied *certiorari*, 464 U.S. 846, 104 S.Ct. 150. *See also Burks v. Arvest Bank*, No. 4:06-cv-00551, 2006 WL 3512478 (E.D. Ark. 2006) ("Since the Court has dismissed the sole named Plaintiff's individual claims, the Court must dismiss the class allegations as well and no notice of this involuntary dismissal need be given to any alleged unnamed class members.").

Like the plaintiff in *Laventhall*, Gardner and Scott have not shown that the putative class members would be unduly prejudiced by not receiving notice. The decision in this action does not prevent class members from bringing their own claims or limit their right to recovery in any way. And, as discussed *supra*, Gardner and Scott concede that unnamed class members are not aware of the case such that they are not relying in Gardner and Scott to press class claims. In the absence of such prejudice, notice is not warranted and the District Court acted well within its discretion in refusing to order it.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the District Court's decision should be affirmed in all respects.

Respectfully submitted,

/s/ Glenn A. Cline
Robert A. Scott
Glenn A. Cline
Ballard Spahr LLP
300 East Lombard St., 18th Fl.
Baltimore, MD 21202
Telephone: 410-528-5600
Facsimile: 410-528-5650

Martin C. Bryce, Jr.
Ballard Spahr LLP
1735 Market Street, 51st Fl.
Philadelphia, PA 19103
Telephone: 215-665-8500
Facsimile: 215-864-8999

*Counsel for Defendant-Appellee,*
*Ally Financial, Inc.*

Dated: June 18, 2014

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e)/32(a)</u>

1. **Type-Volume Limitation:**  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[X ] this brief contains 12,464 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:**  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2010*] in [*14pt Times New Roman*]; **or**

[ ] this brief has been prepared in a monospaced typeface using [*identify word processing program*] in [*identify font size and type style*].

Dated: June 18, 2014                        ____/s/  Glenn A. Cline
                                            Glenn A. Cline

51

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June, 2014, the foregoing Brief

of Appellee was served on the following counsel of record by ECF Notification:

Benjamin Howard Carney
Martin Eugene Wolf
GORDON & WOLF, CHTD
Suite 402
102 West Pennsylvania Avenue
Towson, MD 21204-0000

John J. Roddy
Elizabeth A. Ryan
BAILEY & GLASSER LLP
Suite 1030
125 Summer Street
Boston, MA 02110

Mark H. Steinbach
O'TOOLE ROTHWELL
Suite 200
1350 Connecticut Avenue, NW
Washington, DC 20036-1722


/s/ Glenn A. Cline
Glenn A. Cline

*Counsel for Defendant-Appellee,*
*Ally Financial, Inc.*