**No. 14-1048(L)**

In The
UNITED STATES COURT OF APPEALS
For the Fourth Circuit

_____

GLADYS GARDNER,

*Appellant,*

v.

ALLY FINANCIAL, INC.,

*Appellee,*

v.

MANHEIM REMARKETING, INC.

*Third Party Defendant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(The Honorable J. Frederick Motz)

_____

**REPLY BRIEF OF APPELLANTS**

_____

Martin E. Wolf
Benjamin H. Carney
GORDON, WOLF & CARNEY, CHTD.
102 West Pennsylvania Avenue, Suite 402
Baltimore, MD 21204
(410) 825-2300

*Attorneys for Appellants*

Mark H. Steinbach
Of Counsel to O'TOOLE ROTHWELL
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

John J. Roddy
Elizabeth A. Ryan
BAILEY & GLASSER LLP
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 439-6730

# TABLE OF CONTENTS

Page(s)

I.    Introduction ........................................................................... 1

II.   Argument ............................................................................. 3

A. GMAC's Repeated Assertions that It May Collect
   CLEC-Barred Charges from Plaintiffs Shows that
   Plaintiffs' Claims Are Not Moot ......................................... 3

B. Plaintiffs Are Entitled to Repayment of Amounts
   Collected as Interest, Costs, Fee and Other Charges ....................... 7

C. CLEC Prohibits GMAC from Seeking Any
   Deficiency Amounts –Not Just Deficiency Judgments –
   from Plaintiffs ................................................................. 12

D. CLEC's Deficiency Bar Applies to Private Sales ............................. 14

E. Plaintiffs Are Entitled to Nominal Damages .................................. 17

F. The District Court Erred by Entering Judgment
   Against Plaintiffs When It Found No Case or
   Controversy Existed ........................................................ 19

G. *Bediako* Is Materially Different from this Case ............................... 21

H. The District Court Abused Its Discretion by Refusing
   to Permit Notice to Thousands of Putative Class
   Members Whose Claims GMAC Concealed ................................ 23

III.  Conclusion .......................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bediako v. Am. Honda Fin. Corp.*,
  537 Fed. Appx. 183 (4th Cir. 2013) ........................................... *passim*

*Berry v. Pierce*,
  98 F.R.D. 237 (E.D. Tex. 1983) ........................................ 26

*Biggus v. Ford Motor Credit Co.*,
  328 Md. 188, 613 A.2d 986 (1992) ................................... 16

*Burks v. Arvest Bank*,
  2006 WL 3512478 (E.D. Ark. Dec. 6, 2006) .................................... 26

*Commissioner of Financial Regulation v. Frank J. Ward, III, et al.*,
  No. CFRFY2010-418 (Nov. 26, 2013) ...................................... *passim*

*Dent v. Montgomery County Police Dept.*,
  2011 WL 232034 (D. Md. Jan. 24, 2011) ......................................... 24

*El Paso Nat. Gas Co. v. Neztsosie*,
  526 U.S. 473 (1999) ........................................................... 17

*Fosler v. Panoramic Design, Ltd.*,
  376 Md. 118, 829 A.2d 271 (2003) ...................................... 7

*Frazier v. Castle Ford, Ltd.*,
  200 Md. App. 285, 27 A.3d 583 (2011) ........................................... 18

*Frazier v. Castle Ford, Ltd.*,
  430 Md. 144, 59 A.3d 1016 (2013) .................................... 18

*Gardner v. Ally Fin., Inc.*,
  430 Md. 515, 61 A.3d 817 (2013) ...................................... 12

*Gardner v. GMAC Fin. Inc.*,
      488 F. App'x 709 (4th Cir. 2012) ....................................................... 15

*Laventhall v. Gen. Dynamics Corp.*,
      91 F.R.D. 208 (E.D. Mo. 1981) ......................................................... 26

*Pan American World Airways, Inc. v. United States Dist. Court for Cent. Dist.*,
      523 F.2d 1073 (9th Cir. 1975) ............................................................ 25

*Patton v. Wells Fargo Fin. Md., Inc.*,
      437 Md. 83, 85 A.3d 167 (2014) ....................................... 12, 13, 14, 24

*Planmatics, Inc. v. Showers*,
      30 Fed. Appx. 117 (4th Cir. 2002) ..................................................... 18

*Powerex Corp. v. Reliant Energy Servs.*,
      551 U.S. 224 (2007).......................................................................... 20

*Puffer v. Allstate Ins. Co.*,
      614 F. Supp. 2d 905 (N.D. Ill. 2009)................................................. 26

*Roach v. West Va. Regional Jail & Correctional Facility Auth.*,
      74 F.3d 46 (4th Cir. 1996) ................................................................. 20

*Robinson v. Wix Filtration Corp. LLC*,
      599 F.3d 403 (4th Cir. 2010) ............................................................. 24

*Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*,
      511 F.3d 437 (4th Cir. 2007) ............................................................. 17

*Rothman v. Gould*,
      52 F.R.D. 494 (S.D.N.Y. 1971) ........................................................ 26

*Shelton v. Pargo, Inc.*,
      582 F.2d 1298 (4th Cir. 1978) ..................................................... 25, 26

*Smith v. Toyota Motor Credit Corp.*,
      2013 WL 1325460 (D. Md. Mar. 28, 2013) .......................... 15, 16, 17

*Stueber v. Arrowhead Farm Estates Ltd. P'ship*,
    69 Md. App. 775, 519 A.2d 816 (1987) ............................................. 18

*Taylor v. NationsBank, N.A.*,
    365 Md. 166, 776 A.2d 645 (2001) .................................................... 19

*United States v. Bell*,
    5 F.3d 64 (4th Cir. 1993) ................................................................. 15

## STATUTES

28 U.S.C. §1447(c) ................................................................................. 20

Md. Code Ann., Com. Law §12-1001 .......................................................... 1

Md. Code Ann., Com. Law §12-1018 .................................................... 4, 8, 9

Md. Code Ann., Com. Law §12-1021 ............................................. 15, 17, 23

Md. Code Ann., Cts. & Jud. Pro. §3-406 .................................................... 22

## RULES

Fed. R. Civ. P. 23 ............................................................................. 2, 24-27

Fed. R. Civ. P. 68 ................................................................................. 19, 20

## OTHER AUTHORITY

89 Harv.L.Rev. 1318 (1976) ..................................................................... 25

## I.    Introduction

GMAC's Brief[1] confirms that this case presents a clear, ongoing dispute, and the District Court erred in deciding that no controversy exists. GMAC continues to maintain in this Court that it has the right to collect illegal charges from Plaintiffs, when Plaintiffs[2] asked for a declaration that GMAC could not collect those same charges. The District Court's rationale that GMAC stated it will not seek a "judgment" against Plaintiffs does not end the controversy, where Plaintiffs requested affirmative relief, and in light of GMAC's stated intention to permit itself non-judgment methods of collecting the amounts Plaintiffs claim it is not entitled to at all. This ongoing controversy demonstrates that Plaintiffs' claims are not moot, and the District Court erred.

The District Court erred on a number of other grounds, as well. It held that CLEC[3] civil penalties are not triggered until the total principal borrowed is repaid, contradicting on-point state authority in *Ward*.[4] The District Court refused to provide Plaintiffs a declaration that GMAC was not entitled to collect deficiency

---

[1] "GMAC" refers to Defendants-Appellees, Ally Financial, Inc. f/k/a GMAC, Inc., Nuvell National Auto Finance, LLC and Nuvell Financial Services, LLC.

[2] "Plaintiffs" are Plaintiffs-Appellants Gladys Gardner and Randolph Scott.

[3] Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law §§12-1001 *et seq*. ("CLEC")

[4] *Commissioner of Financial Regulation v. Frank J. Ward, III, et al*., No. CFR-FY2010-418 (Nov. 26, 2013) ("*Ward*"), JA614-646.

1

amounts from them, in derogation of binding precedent from the Maryland Court of Appeals. It entered judgment against Plaintiffs on the bulk of their claims without mentioning them – including a judgment on their breach of contract claim, where Plaintiffs established a breach of contract and the District Court did not award even nominal damages. The District Court entered judgment against Plaintiffs when it found no case or controversy existed, though the U.S. Code and ample case law mandates a remand or dismissal without prejudice in such a circumstance. The District Court found that the unpublished *Bediako*[5] decision bound it to enter judgment against Plaintiffs – despite *Bediako*'s non-binding nature and the contrary, post-*Bediako* decision in *Ward* which Maryland law dictates is *prima facie* correct, and despite the fact that *Bediako* did not involve the declaratory judgment claim which distinguishes it from this case.

Finally, the District Court abused its discretion by refusing to permit Fed. R. Civ. P. 23(d) notice to putative Class members prior to dismissal. During the course of class certification discovery, following GMAC's original, unsuccessful motion for summary judgment, GMAC identified thousands of persons falling within the putative Class from whom GMAC collected millions in illegal charges - even under the CLEC damages calculus endorsed by the District Court. GMAC

---

[5] *Bediako v. Am. Honda Fin. Corp.*, 537 Fed. Appx. 183 (unreported) (4th Cir. 2013) ("*Bediako*").

concealed the identities of those Class members, and GMAC concealed their causes of action through false correspondence. Those Class members should be notified of their claims, and permitted an opportunity to intervene and protect their rights. The District Court's refusal to permit that notice failed the Court's obligation to protect the putative Class, and was an abuse of the Court's discretion.

GMAC's Brief does not successfully reconcile any of these aspects of the District Court's decision with the controlling law. The District Court should be reversed.

## II. Argument

### A. GMAC's Repeated Assertions that It May Collect CLEC-Barred Charges from Plaintiffs Shows that Plaintiffs' Claims Are Not Moot.

GMAC's CLEC violations entitle Plaintiffs to a declaration that it cannot collect interest, costs, fees and other charges from Plaintiffs in the future as part of purported deficiency balances. GMAC even now insists that it may collect purported deficiencies from Plaintiffs - deficiencies which specifically include interest, costs, fees and other charges. The District Court acknowledged that GMAC is barred from collecting any interest, costs, fees or other charges, but ignored the fact that those same charges are included in Plaintiffs' purported deficiencies when it decided Plaintiffs' claims were "moot." The District Court's decision is, as a result, internally inconsistent and wrong. GMAC fails to address

Plaintiffs' claim for a declaration regarding future collection of charges in addition to principal – an omission which speaks volumes.

Plaintiffs have established that GMAC violated CLEC and may not collect any interest, costs, fees, or other charges from them. JA658 ("The CLEC provides that because defendants violated its terms, they may not collect any interest, costs, fees or other charges with respect to the loan.") (citing CLEC 12-1018(a)(2)).

GMAC's own documents show that the purported deficiencies it seeks to collect from Plaintiffs include interest, costs, fees and other charges. *See* JA068, 136; *see also* Opening Br. at 28-29. The letters GMAC sent to Plaintiffs demanding deficiency payments identify these amounts. For example, the deficiency GMAC seeks from Mr. Scott includes the following interest, costs, fees and other charges:

| | | | | | | |
|---|---|---|---|---|---|---|
| Accrued finance charges | | | | | + | $1,371.25 |
| Late fees | | | | | + | $316.04 |
| | | * | * | * | | |
| Repossessing costs | | | | + | $375.00 | |
| Transporting costs | | | | + | $50.00 | |
| Bail Out Fees | | | | + | $.00 | |
| Storage | | | | + | $.00 | |
| Reconditioning | | | | + | $74.50 | |
| Selling costs | | | | + | $82.50 | |
| Title and registration fees | | | | + | $.00 | |
| Attorney fees and legal expenses the law permits | | | | + | $.00 | |
| Other (describe): | | | | | | |
| Administration fees | | | | + | $5.00 | |
| Repair fees | | | | + | $.00 | |
| Miscellaneous costs | | | | + | $.00 | |
| Total expenses | | | | | + | $ 587.00 |

JA068.

4

Similarly, GMAC seeks to collect the following fees, costs, and other charges from Ms. Gardner as part of her purported deficiency:

| | |
|---|---|
| Repossessing & transporting | $   225.00 |
| Storage & reconditioning | 76.50 |
| Selling costs (less $10 deposit) | 95.50 |
| Title & registration fees | 36.39 |
| Attorney fees and legal expenses the law permits | 0.00 |
| Total expenses | +   433.39 |

JA136.[6]

Plaintiffs specifically requested a declaration that GMAC could not collect these amounts of interest, costs, fees and other charges. *See* JA054-057,060, 118-120, 123-124.

GMAC's Brief does not dispute that it is continuing to seek these amounts from Plaintiffs. To the contrary, it continuously reiterates its claim of entitlement to the deficiencies. *See* GMAC Br. at 31 ("Gardner and Scott would not be entitled to any correction of credit report data reflecting deficiencies since they remain responsible for such deficiencies"); 33 ("GMAC … has not wiped away [Plaintiffs'] deficiencies"); 43 ("even if Gardner and Scott were entitled to nominal

---

[6] GMAC seeks these amounts after its CLEC violations, a fact which contradicts GMAC's assertion that the only interest, costs, fees and other charges at issue in this case were collected prior to those violations. *See* GMAC Br. 41-42. This is an area where GMAC disagrees with *Bediako* – which did not employ any analysis of when the CLEC violations occurred (indeed, an analysis not suggested anywhere in the CLEC statute) in determining whether CLEC damages existed. GMAC's own disagreement with *Bediako* adds to the controversy over the question of CLEC damages, and supports certifying the question of the proper interpretation of CLEC's remedies provisions to the Maryland Court of Appeals. *See* Doc. No.32.

damages, any such damages would be overshadowed by the $11,000 deficiencies they each owe")[7]; 30 ("to the extent CLEC bars anything related to deficiencies, it bars deficiency judgments, not the collection of deficiencies themselves"); 11 ("should GMAC ever be ordered to provide relief to Gardner or Scott or putative class members, it would seek to offset any such relief against their deficiencies.") These statements are consistent with GMAC's prior statements that it continues to hold Plaintiffs liable for deficiencies, discussed in Plaintiffs' Opening Brief. *See* Opening Br. at 28.

While an important question in this case is – what are interest, costs, fees or other charges with respect to the loan? – there is no dispute that the amounts discussed above, which GMAC continues to seek from Plaintiffs, are interest, costs fees and other charges under CLEC. The District Court should have entered a declaratory judgment that GMAC could not collect those charges. The District Court's decision instead to label Plaintiffs' claims relating to their deficiencies as an issue where "no case or controversy" was error.

---

[7] GMAC's argument, that Plaintiffs are not entitled to a judgment awarding nominal damages because of deficiencies they purportedly owe, is inconsistent with GMAC's position that it has waived deficiency judgments. If GMAC avoids a judgment for nominal damages on the basis that Plaintiffs owe it money, that constitutes a judgment that Plaintiffs owe it deficiencies – *i.e. a deficiency judgment*.

**B. Plaintiffs Are Entitled to Repayment of Amounts Collected as Interest, Costs, Fee and Other Charges.**

Under *Ward*, CLEC's civil penalties entitle Plaintiffs to repayment of amounts collected in the past by GMAC as interest, costs, fees and other charges. GMAC does not dispute that *Ward* required repayment of interest, costs and fees prior to repayment of all principal, and cannot square *Ward* with the District Court's decision. The District Court misread CLEC, and should be reversed.

GMAC does not dispute that the Commissioner is CLEC's regulator, and, as a result, adjudicatory opinions issued by the Commissioner (like *Ward*) are ***prima facie correct*** and ***presumed valid*****'**" and "entitled to considerable weight." *Fosler v. Panoramic Design, Ltd.*, 376 Md. 118, 136, 829 A.2d 271, 282 (2003) (emphasis added, citation omitted). *See* Opening Br. at 33.

*Ward* considered the question - what are interest, costs, fees or other charges with respect to the loan? According to *Ward*, the answer is - ***all amounts charged*** as interest, costs, fees or other charges - even where the principal amount borrowed has not yet been repaid. JA634-635. As a result, *Ward* required a lender to refund interest and fees collected in the *past*, even where the loan principal had not been repaid:

> Respondent Ward must immediately notify each borrower that they have a choice of receiving a refund of the fees and interest paid, or of having these amounts credited against the remaining principal.

7

*Id*. at 634. Importantly, in the case of a loan assigned to another lender, *Ward* required the original lender to set up an escrow account to pay *future* interest and fees. *Id*. at 635.

The District Court decided, contrary to *Ward*, that the total principal borrowed must be repaid before CLEC's civil penalties provisions are triggered, either to prohibit future collections or to require repayment of past collections.[8] *See* JA658 (concluding that Plaintiffs failed to state a claim because, "defendants have not collected from plaintiffs the principal amounts of the loans").

The District Court attempted to distinguish *Ward* on the sole basis that the lender in *Ward* still had a security interest in the loans at issue, stating:

> the difference between *Ward* and this case is that in *Ward* the lender still had a security interest in the collateral securing the loan.

JA659 at n. 2.  GMAC relies on this purported distinction.  *See* GMAC Br. at 41.

The distinction does not exist. To the contrary, *Ward* specifically required repayment of all amounts collected as interest, costs, fees and other charges, where the lender ***no longer held a security interest*** because the loan had been assigned:

> With respect to [redacted] to whom Ward unlawfully charged a finder's fee, (ALJ decision p. 59), the remedy must be somewhat different ***because Ward sold the loan to a third party***. He cannot re-

---

[8] GMAC does not dispute that the language of the Maryland Mortgage Lender Law ("MMLL") at issue in *Ward* is materially identical to the language of CLEC §12-1018(a)(2). *See* Opening Br. 32. The District Court acknowledged that the provision at issue in *Ward* is "analogous" to CLEC §12-1018(a)(2). JA 658 at n.2.

amortize it or modify the monthly payment amount. Accordingly, in order to provide appropriate relief to the [redacted], Ward must (i) reimburse the [redacted] for all impermissible interest and fees collected on the mortgage through the date of the Final Order; and (ii) calculate the total amount of impermissible interest and fees that will be paid over the remaining life of the mortgage and deposit that amount into an escrow account for the benefit of the [redacted] to be used to pay, on a monthly basis, the difference between the monthly principal and interest payment owed to Bank of Delmarva (or any subsequent holder of the mortgage) and the amount that would be owed based on an interest free, principal only payment calculation from loan inception to maturity.

JA635 (emphasis added).

Accordingly, where the lender in *Ward* had ***no*** security interest in the collateral, *Ward* required the lender to establish an escrow to pay all ***future*** interest and fees. *Id*. The distinction relied upon by GMAC and the District Court is thus no distinction at all.[9]

GMAC manufactures another purported distinction between *Ward* and this case, claiming that *Ward* did not require a refund of costs and fees to borrowers in foreclosure, and analogizing those borrowers to Plaintiffs.  GMAC Br. 39-42. Again, however, the distinction *does not exist*. *Ward* ordered the choice of a return, in cash, of interest and fees, or a credit against principal, for ***all*** affected borrowers. *See Ward* at 21-22 ("each borrower" has this choice).

Thus, borrowers in foreclosure were entitled to the ***same*** relief as the other borrowers, the ***same*** refund of impermissible fees, and, like other borrowers, could

---

[9] Moreover, no "security interest" requirement appears in CLEC §12-1018(a)(2).

*elect* for that refund to be applied to the outstanding principal loan balances. *Ward* expressly provided this option to borrowers in foreclosure:

> Respondent Ward currently has foreclosure actions pending against several consumers who have taken out purchase money mortgages with Ward. Because Respondent Ward was collecting impermissible fees on those loans (the refund of which the borrowers **may elect** to have applied to their outstanding principal loan balances) it is unclear whether those borrowers are actually in default.

*Ward* at 23-24 (emphasis added). Indeed, the *Ward* "Order" provides the **same relief to all borrowers**, as follows:

- "**all** mortgages" violating the statute "are non-interest bearing principal payment only mortgages, and Ward may not retain or collect any interest or fees…in connection with these mortgage[s]," *Id*. at 26 ¶ F (emphasis added);

- **all** borrowers have "**the option** of either a **cash payment** for all impermissible fees and interest collected … **or, in the alternative**, having the aggregate of any impermissible interest and fees … credited for a reduction in principal amount due on the mortgage." *Id*. at 26 ¶ G (emphasis added);

- **all** borrowers were entitled to cash payments within 15 days of their election, and to revised payment schedules. *Id*. at 26 ¶ H.

Nothing carves borrowers in foreclosure out of this relief for "all mortgages," and the language quoted in the passage above identifies the right of borrowers in foreclosure to "elect" the manner in which the interest and fees would

10

be returned.[10]  *Ward* gave both foreclosed and non-foreclosed borrowers the same *option* – applying or "crediting" the returned interest and fees towards the principal, or keeping the returned funds.[11]

GMAC does not dispute that it collected amounts as interest, costs, fees and other charges from Plaintiffs.  *See* Opening Br. at 11-12. It claims, rather, that the total amount of Plaintiffs' principal has not yet been satisfied.

Because – as both the District Court and GMAC have recognized – *Ward* requires the refund of all interest, costs, fees and other charges collected prior to satisfaction of principal, and because neither of the distinctions relied upon by either the District Court or GMAC exist, *Ward* is irreconcilable with the District Court's decision.  *Ward*, as the adjudicatory decision of Maryland's CLEC regulator, is presumed correct and *prima facie* valid under the law.  The District Court's contrary decision should be reversed.

---

[10] In fact, *Ward* provided borrowers in foreclosure special **additional** relief – an order that all foreclosure actions be dismissed.  This was because the *Ward* respondent had to submit revised statements of debt, re-amortizing the loans as interest free and taking into account whether the borrowers **elected** the cash refund **or** applied the amount of interest and fees collected against their principal. *Ward* at 27 ¶ J.

[11] If *Ward* contains "ambiguous" language as GMAC claims, GMAC Br. 40 n.21, that supports certification of the question which *Ward* addresses to the Maryland Court of Appeals for clarification.

### C. CLEC Prohibits GMAC from Seeking Any Deficiency Amounts – Not Just Deficiency Judgments – from Plaintiffs.

GMAC's Brief argues that it may collect deficiencies with impunity, so long as it does not seek a judgment.   However, recent Maryland Court of Appeals decisions – including its decision in this case – establish that GMAC's CLEC violations entitle Plaintiffs to complete relief from GMAC's purported deficiencies.

For example, the Maryland Court of Appeals recently held that a lender is limited to the proceeds of a repossession sale if it does not comply with CLEC:

> If a lender fails to comply with the provisions of CLEC, such as those pertaining to repossession and sale of collateral — as alleged in this case — ***the primary remedy in the statute is to limit the lender to the funds recovered from the sale*** and eliminate its right to obtain a deficiency judgment.

*Patton v. Wells Fargo Fin. Md., Inc*., 437 Md. 83, 108, 85 A.3d 167, 181 (2014) (emphasis added).

This holding is consistent with the Maryland Court of Appeals' same decision in this case:

> If the debtor can show that the creditor failed to abide by the requirements of CLEC in selling the collateral, ***the creditor may be barred from a deficiency judgment and limited to the proceeds of the sale as satisfaction of the debt***.

*Gardner v. Ally Fin., Inc*., 430 Md. 515, 525, 61 A.3d 817, 823 (2013) (emphasis added).

GMAC's Brief nevertheless asserts, as discussed above, that it is entitled to pursue Plaintiffs for deficiency balances despite its violations of CLEC. GMAC's remarkable response to the holdings of *Gardner* and *Patton* is to claim that the consistent holdings in these two separate cases are "clearly a case of the Maryland Court being loose in its language." GMAC Br. at 30 n. 15.

GMAC's accusation that *Patton* and *Gardner* are the result of carelessness on the part of Maryland's highest court mischaracterizes these carefully reasoned cases.  First, the portion of *Patton* quoted above, which GMAC characterizes as *dicta*, is in a paragraph entitled "summary" which begins "In sum, *we hold that*…". It is no off-the-cuff statement.

Similarly, the portion of *Gardner* quoted above was critical to the Court's decision in this case, and was made in the course of reviewing the purpose of CLEC's repossession notice requirements.  The Court of Appeals found that CLEC's repossession notice requirements were enacted to "prevent private sales that are made to the detriment of the defaulting buyer/borrower" – which is the reason the credit grantor is limited to the proceeds of the sale, and cannot pursue the borrower for additional deficiency amounts. *Gardner*, 430 Md. at 528, 61 A.3d at 825.

Nevertheless, GMAC has pursued Plaintiffs for deficiencies, has taken the position it can continue to pursue Plaintiffs for deficiencies, and has collected

amounts on those deficiencies.  *See* Opening Br. at 9-11.[12]

GMAC's position, endorsed by the District Court, that it can get away with concealing information about its private sales, and can still take all avenues short of a judgment to go after borrowers for deficiencies resulting from those improper sales would frustrate the consumer protection provisions of CLEC which were designed to prevent that very circumstance.  *Patton* and *Gardner* mandate a contrary result, and both support reversing the District Court.

**D. CLEC's Deficiency Bar Applies to Private Sales.**

In a particularly ironic argument, GMAC claims that CLEC does not even bar deficiency judgments against Plaintiffs because the Maryland Court of Appeals determined that the sales of Plaintiffs' vehicles were private, not public. GMAC claims that CLEC's deficiency bar applies only in the case of public sales. GMAC Br. at 26-27 n. 14. In other words, GMAC claims that the fact it sold Plaintiffs' vehicles at private sales – when it told Plaintiffs, this Court, and the world they were "public" – immunizes it from CLEC's civil penalties. GMAC's argument is contradicted by this Court's prior holding in this case and the text of CLEC.

---

[12] GMAC claims that the amounts collected on Plaintiffs' accounts were "credits" not paid by Plaintiffs – GMAC Br. 37-38 - but those "credits" were paid by someone to GMAC and constitute collections on Plaintiffs' purported deficiencies. Because CLEC limits GMAC to the sale proceeds in satisfaction of Plaintiffs' loans, it was required to pay over the "credits" to Plaintiffs.  It did not.

This Court's reason for certifying a question to the Maryland Court of Appeals in the last appeal in this case was based on the predicate that, if the sale was private, CLEC's deficiency bar applied:

> [i]f a creditor does not comply with the stated requirements [for providing information following a ***private sale***] it '***shall not be entitled to any deficiency judgment to which [it] would be entitled under the loan agreement***.' [CLEC] §12-1021(k)(4). ***Because GMAC did not provide all of the required private sale disclosures, the resolution of whether the sales of Appellants' vehicles were by private sale or public sale is determinative of the issue in the pending litigation.*** … Therefore, we certify the question set forth above to the Court of Appeals of Maryland.

*Gardner v. GMAC Fin. Inc.*, 488 F. App'x 709, 713-14 (4th Cir. 2012) (emphasis added).    This is the law of the case. *See United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993).

This is also the conclusion which is apparent from the statutory text. "Under a plain reading of the statute, ***(k)(4) applies to all CLEC violations***; not just those arising from a public sale." *Smith v. Toyota Motor Credit Corp.*, 2013 WL 1325460 at *7 n. 13 (D. Md. Mar. 28, 2013).  *Smith* explained as follows:

> TMCC contends that §12–1021(k) applies, in its entirety, only to public sales. Id. In support, TMCC notes that §12–1021(k)(1) provides, "[t]he provisions *of this subsection* apply to a public sale of property which secured a loan in excess of $2,000 at the time the loan was made" (emphasis added). However, unlike subsection (k)(1), (k)(4) does not contain this limiting language, providing that "[i]f the provisions *of this section*, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement" (emphases in original).

15

*Smith,* 2013 WL 1325460 at *7 n. 13.

GMAC's argument here is based upon reading subsection (k)(1) into subsection (k)(4) – exactly the reading rejected by *Smith*'s persuasive reasoning.

In addition, CLEC's legislative history confirms that CLEC's deficiency bar applies to both public and private sales. As *Gardner* recounted, the 1987 amendments to CLEC, which permitted private sales, were designed to balance the scales between creditors and consumers, so as to maximize the creditor's flexibility to "seek the best resale price on the repossessed goods" while simultaneously protecting consumers against commercially unreasonable or collusive private sales that would create unfairly derived deficiencies. *Gardner*, 430 Md. at 529, 61 A.3d at 825; *see also Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 613 A.2d 986 (1992).

GMAC's view of the statute would undermine this design. Its construction of CLEC provides a positive incentive to credit grantors to violate the statute. Selling vehicles at private sales means that consumers cannot monitor them, or challenge them for commercial unreasonableness – and, unless there is some penalty for not providing consumers with the information that would allow them to challenge the sales, creditors will ***always*** be better off, and guaranteed of getting a deficiency regardless of the conduct of the sale, if they do ***not*** provide the required information.

16

GMAC's argument that deficiency judgments are not barred for non-compliance with CLEC in the context of private sales is thus counter to both the text of CLEC and to its legislative history. GMAC's argument should be rejected.[13]

### E. Plaintiffs Are Entitled to Nominal Damages.

Longstanding principles of contract law provide that a plaintiff is entitled to nominal damages if she proves a breach of contract – even in the absence of actual damages. Plaintiffs alleged that GMAC breached their contracts by violating CLEC. The District Court held that GMAC violated CLEC, JA658, yet erroneously denied Plaintiffs even nominal damages, entering judgment *against* them. GMAC argues that Plaintiffs cannot obtain nominal damages[14] on the purported basis that consumers have fewer contract rights than anyone else – that there is some complete bar to nominal damages sought by a consumer, under any claim. GMAC Br. at 43. This is not the law.

---

[13] Notably, the District Court held that GMAC was barred from obtaining deficiency judgments under the statute. JA658 ("because of their violation of the terms of the statute, defendants may not obtain a deficiency judgment against plaintiffs.") GMAC cannot seek to enlarge its rights and alter the District Court's judgment without a cross-appeal. See *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999); *Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*, 511 F.3d 437 (4th Cir. 2007). Moreover, the District Court's disagreement with the result in *Bediako* - that CLEC §12-1021 did not bar a deficiency judgment in the context of the private sale - both in *Smith* and in this case (which was decided post-*Bediako*) provides further support for certifying to the Maryland Court of Appeals the controversial question of the proper reading of CLEC's remedies.

[14] Plaintiffs are also entitled to liquidated breach of contract damages in the amount of the CLEC civil penalty provisions incorporated into their contracts.

17

GMAC does not dispute that a creditor breaches its contract with its borrower when it utilizes repossession notices which are faulty under CLEC. *See* Opening Br. at 35-36. Instead, it again relies on *Bediako*, claiming it supports the conclusion that Maryland completely bars nominal damages in consumer cases. *Bediako*, however, cited a reversed decision of the Maryland Court of Special Appeals, which held only that nominal damages are not available under the Maryland Consumer Protection Act statute. *See Bediako*, 2013 WL 3943183 at *3 (citing *Frazier v. Castle Ford, Ltd.*, 200 Md. App. 285, 296, 27 A.3d 583, 589 (2011), *rev'd* 430 Md. 144, 59 A.3d 1016 (2013)). *Bediako* relied upon *Frazier* to hold that nominal damages are not available under another statute - CLEC. *Id.*

Both *Bediako* and the reversed *Frazier* decision concerned statutory claims - neither suggested in any way that they were upsetting well-settled Maryland law establishing the right to nominal damages for any breach of contract. *See*, *e.g.*, *Planmatics, Inc. v. Showers*, 30 Fed. Appx. 117, 118 (4th Cir. 2002) ("Maryland law… requires the award of at least nominal damages if a contract has been breached.")(citing *Stueber v. Arrowhead Farm Estates Ltd. P'ship*, 69 Md. App. 775, 519 A.2d 816, 818 (1987) ("It is well settled that whenever there is a contract and breach of that contract the trial court must assess some damages, nominal or substantial as it shall find to be proper on the law and the evidence." (internal

quotation marks omitted))); *see also Taylor v. NationsBank, N.A.*, 365 Md. 166, 776 A.2d 645, 651 (2001)(same).

The District Court's entry of judgment against Plaintiffs on their breach of contract claims, where Plaintiffs had proven a breach of contract due to GMAC's violations of CLEC, was error. The judgment should be reversed.

### F. The District Court Erred by Entering Judgment Against Plaintiffs When It Found No Case or Controversy Existed.

If no case or controversy exists in a case pending in federal court, the mandatory course is to remand the case, if originally filed in state court, and to dismiss a federal case without prejudice, if originally filed in federal court. *See* Opening Br. 43-46. The District Court found that Plaintiffs failed to present a case or controversy regarding their claims related to deficiencies, JA658, and that their claims on that subject were "moot" JA659 n.3. The District Court erred by entering judgment against Plaintiffs on this finding, instead of remanding or dismissing their claims without prejudice.

GMAC does not discuss or distinguish the ample authority mandating remand or dismissal without prejudice when claims are found to be moot.[15] *See*

---

[15] GMAC's response is to question how Plaintiffs believe that their cases are like cases involving Fed. R. Civ. P. 68 offers of judgment. GMAC Br. 33.Those cases to show why GMAC should not be allowed to pick off the Plaintiffs, as putative class representatives, by attempting to moot their claims. Such attempts should be treated the same way as a defendant's attempt to pick off a putative class representative through a Rule 68 offer. *See* Opening Br. 46-56. Regardless of

Opening Br. at 44-46 (*citing*, *inter alia*, 28 U.S.C. §1447(c), *Powerex Corp. v. Reliant Energy Servs.*, 551 U.S. 224, 230 (2007), *Roach v. West Va. Regional Jail & Correctional Facility Auth.*, 74 F.3d 46, 48-49  (4th Cir. 1996)).

Instead, GMAC boldly claims that Plaintiffs "mischaracterize" the District Court's holding that GMAC's abandonment of deficiency judgments mooted Plaintiffs' claims.  GMAC Br. at 30-31 (Plaintiffs "claim that the District Court 'entered a judgment against Plaintiffs on the finding that their claims are 'moot' and that 'no case or controversy exists' … Gardner and Scott mischaracterize … the District Court's holding.")

Then, in an about-face, GMAC admits that the District Court held that Plaintiffs' claims were moot (arguing it did not use the word "moot"):

> Judge Motz did write that 'no case or controversy' existed JA658 (Slip Op. at 2), but this was in reference to the deficiency judgment issue, not to Gardner's and Scott's cases generally. JA658(Slip Op. at 2 ("***As to the deficiency judgment issue***, clearly no case or controversy exists…")(emphasis added).

GMAC Br. at 32 (emphasis by GMAC).

GMAC then claims that it "is not seeking" this "mootness" finding. *Id*. at 34. Two sentences later, however, GMAC abruptly changes position again, arguing that the deficiency judgment claims are moot:

---

whether GMAC's attempt is treated akin to a Rule 68 offer of judgment, however, the District Court erred in entering judgment against Plaintiffs when finding their claims moot, instead of remanding or dismissing their claims without prejudice.

> there is no need for a judgment in connection with GMAC's abandonment of any deficiency judgment action because GMAC is already barred from seeking such a judgment by, among other things operation of law.

*Id*.

GMAC cannot have it both ways. Either Plaintiffs' claims are moot, and must be remanded to state court or dismissed without prejudice, or they are not moot. If they are not moot, an ongoing controversy exists, and the District Court's judgment against Plaintiffs on mootness grounds was error. Either way, the District Court erred when it entered judgment against Plaintiffs.

### G. *Bediako* Is Materially Different from this Case.

The District Court relied on *Bediako* for its decision contrary to *Ward*, holding that *Bediako* is binding and *Ward* is not. JA658 n. 2. However, *Bediako* is not only non-binding and at odds with the "prima facie correct and presumed valid" *Ward* decision, it also is materially distinct from this case. Plaintiffs discussed the distinctions between *Bediako* and this case in their Opening Brief, and yet GMAC repeats *ad nauseum* the erroneous and conclusory assertions that this case is a "carbon copy of *Bediako*" with the "same exact" claims as *Bediako*. *See, e.g.,* GMAC Br. at 9, 13, 14, 19, 20. GMAC's *ipse dixit* does not, and cannot, successfully reconcile *Bediako* with this case.

For example, this case involves a declaratory judgment count – *Bediako* did not.[16] GMAC does not dispute this. Instead, GMAC responds only that Plaintiffs are not entitled to a declaration that their deficiency balances are "satisfied." GMAC Br. at 23-24. Plaintiffs are entitled to such a declaration, but ***that is not the only declaration they requested***.  Plaintiffs also requested a declaration that GMAC may no longer collect any "interest, costs, fees or other charges" from them – amounts that CLEC prohibits GMAC from collecting, and amounts that GMAC continues to seek from Plaintiffs. *See* part II.A, *supra*. GMAC has no response to Plaintiffs' request for ***this*** declaration. Plaintiffs' declaratory judgment claims thus undisputedly distinguish *Bediako*.

Second, *Bediako* does not support the District Court's failure to allow even nominal damages for breach of contract. Although *Bediako* considered whether nominal damages were warranted by statute under CLEC (and concluded they were not), it did not address nominal damages for breach of contract.  Plaintiffs here are entitled to at least those damages, *see* part II.E, *supra*, yet another aspect of this case to which *Bediako* does not speak.

Third, *Bediako* did not involve the deception or concealment that GMAC has perpetrated here. GMAC concealed from Plaintiffs the nature of their sales –

---

[16] *Bediako* discusses whether a declaration is warranted under CLEC, which does not provide for declaratory relief, not in a claim under Md. Code Ann., Cts. & Jud. Pro. §3-406.

telling Plaintiffs that the sales were "public" without mentioning the $1,000 cash-only fee to attend the sale, and then concealing information about the sale *to this day* which CLEC requires in connection with any private sale. *See* Br. at 36-37. GMAC responded that CLEC was "far from clear" on whether the sales were public or private. GMAC Br. at 22. The Maryland Court of Appeals, however, determined that GMAC's sales "could not" have constituted public sales:

> The admission fee shielded the process used to sell Ms. Gardner's and Mr. Scott's cars from observation and, thus, could not constitute a "public auction" under CLEC. Rather, the sales were, in actuality, "private sales" subject to the post-sale disclosure requirements of Section 12-1021(j)(2).

*Gardner*, 430 Md. at 533, 61 A.3d at 828. That GMAC continues to profess consternation that an undisclosed, $1,000 cash entry fee rendered its sales private does not wash away the deception. That deception was not present in *Bediako*, and distinguishes that case from this one.

These distinctions show that *Bediako*'s reasoning should not be applied here.

### H. The District Court Abused Its Discretion by Refusing to Permit Notice to Thousands of Putative Class Members Whose Claims GMAC Concealed.

GMAC admitted that it sold at the Tuesday Sales the vehicles of thousands of persons, and sent them the same false form letters as it sent Plaintiffs – and GMACs own information shows that it collected from them more than $10 million on top of the amount financed in their transactions (i.e. CLEC damages even under

the restrictive view held by the District Court).[17]  GMAC admitted that these

persons were putative class members, and that the putative class met all of the

requirements of the class action rule, Fed. R. Civ. P. 23 (although GMAC reserved

the right to contest the named Plaintiffs' adequacy). *See* Opening Br. 12-13.[18]

Because (1) GMAC has admitted the propriety of class certification, (2) the

litigation on the merits of the case has shown that thousands of people are entitled

to many millions of dollars of relief, and (3) GMAC has concealed their identities

and affirmatively concealed their causes of action from them, the District Court

abused its discretion in refusing to permit notice to those persons, and in refusing

to permit discovery to identify those persons so that they could be notified.  *See*

Opening Br. 46-56.[19]

---

[17] GMAC suggests that it provided other information which indicates a lower amount of class damages. GMAC Br. 6. Notably, GMAC does not dispute that substantial damages exist for putative Class members.  Moreover, the spreadsheets to which GMAC refers are based upon a reading of CLEC's statute of limitations rejected by the Maryland Court of Appeals in *Patton*.

[18] Although GMAC claims it cannot be held to these admissions, GMAC Br. at 43 n.23, they were the basis for the Court's resolution of a discovery dispute and are thus binding. They are judicial admissions. *See* GMAC Br. 25. While GMAC claims the admissions were made by "former" counsel, parties are "bound by the decisions of [their] prior counsel." *Dent v. Montgomery County Police Dept.*, 2011 WL 232034 (D. Md. Jan. 24, 2011) (citing *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010)).

[19] GMAC claims that cases Plaintiffs cited are distinguishable because the court assumed that the class was certifiable. GMAC Br. 48. Here, GMAC has admitted the class is certifiable.

GMAC's responds by citing a 1975 Ninth Circuit case. *See* GMAC Br. 46 (citing *Pan American World Airways, Inc. v. United States Dist. Court for Cent. Dist.*, 523 F.2d 1073, 1079 (9th Cir. 1975)) ("*Pan American*"). *Pan American* held that notice to the putative class was absolutely barred prior to class certification. *Id.* ("notice for the purpose of bringing the claims of unnamed members of the plaintiff class before the court may not issue before a class action has been certified.") In four decades since *Pan American* was decided, however, courts, including this Court, have determined that no such prohibition exists. *See*, *e.g.*, *Shelton v. Pargo, Inc*., 582 F.2d 1298, 1306 (4th Cir. 1978). As quoted approvingly in *Shelton*:

> while pre-certification dismissal does not legally bind absent class members, notice may be appropriate under some circumstances to afford absentees an opportunity to intervene and take over the class suit, or to file individual claims. The judge's authority to order notice in the pre-certification situation is clear; the only question is when he should do so.

*Id*. at 1309 (quoting 89 Harv.L.Rev. 1318 at 1541-1542 (1976)).

One appropriate time for a judge to order notice pre-certification is when there is a risk that class members may fail to file their own suits otherwise:

> Rule 23(d)(1)(B)(i) authorizes a court to require that appropriate notice be given to class members "of any step in the action," in order to "protect class members." Certainly, the denial of class certification is a "step in the action." And, it is a step in the action that, absent notice to putative class members, may injure their interests. … in this case there is the risk that unless putative class members are notified of the denial of class certification, they may fail to file their own suits

25

and thus fail to 're-arrest' the statute of limitations, and as a result they may find themselves time barred without knowing it." Rule 23(d) allows a court to give notice to help avoid that result, as part of its power to "protect class members."

*Puffer v. Allstate Ins. Co*., 614 F. Supp. 2d 905, 910 (N.D. Ill. 2009) (internal citation omitted). That is the risk here – that Class members not knowing of their meritorious claims "may find themselves time barred without knowing it." *Id*.

GMAC attempts to distinguish this Court's decision in *Shelton* – which required the district court to look into an individual settlement in a putative class action to determine whether collusion occurred – on the basis that this case does not involve a settlement.  It is true that Plaintiffs have not voluntarily sought to give up their claims, as was the case in *Shelton*. However, the court's protection of putative class members should not depend solely upon the motivations of the named Plaintiffs. If GMAC can moot Plaintiffs' claims over Plaintiffs' objections and thus prejudice the putative class, putative class members are harmed no less than if GMAC mooted those claims with Plaintiffs' complicity. Rule 23 focuses on protection of the putative Class – not policing the subjective intentions of Class representatives.[20]

---

[20] GMAC's attempts to distinguish *Berry v. Pierce*, 98 F.R.D. 237, 239 (E.D. Tex. 1983) and *Rothman v. Gould*, 52 F.R.D. 494, 501 (S.D.N.Y. 1971) fail for the same reasons. *Laventhall v. Gen. Dynamics Corp*., 91 F.R.D. 208 (E.D. Mo. 1981), confirms that pre-certification notice after involuntary dismissal is appropriate where, as here, prejudice would otherwise result. And there is no indication that *Laventhall* or *Burks v. Arvest Bank*, 2006 WL 3512478 (E.D. Ark. Dec. 6, 2006)

The lack of class notice will prejudice the putative Class because of GMAC's false communications with Class members. *See* Opening Br. 9, . GMAC told each member of the putative Class that the sale of their vehicle was at a "public" sale. *See* JA579 (confirming that each putative Class member received the same form letter). This false statement conceals the causes of action of the Class members – whose vehicles were actually sold at "private" sales and who are therefore entitled to more information about the sales than they got. *See* JA581 (confirming that each putative Class member received the same faulty post-sale notices). If GMAC's representation goes uncorrected, Class members will likely be lulled into inaction and will allow statutes of limitation to run on their claims – when this case has already established the substantive merits of those claims.

This situation calls out for the exercise of discretion to provide notice to putative Class members. The District Court abused its discretion by refusing to protect putative class members and permit notice to correct GMAC's concealment of their claims.

---

involved a situation where the Rule 23 prerequisites had been admitted, or where class members had been deceived through correspondence from the defendants which concealed the class claims.

### III.    Conclusion

For the reasons set forth above, and in Plaintiffs' Opening Brief, Plaintiffs respectfully request that this Court reverse the District Court.

Respectfully submitted,

Dated:  July 7, 2014

/s/ Benjamin H. Carney
Martin E. Wolf
Benjamin H. Carney
GORDON, WOLF & CARNEY, CHTD.
102 West Pennsylvania Ave.
Baltimore, Maryland 21204
(410) 825-2300

Mark H. Steinbach
O'TOOLE, ROTHWELL, NASSAU &
STEINBACH
1350 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 775-1550

John J. Roddy
Elizabeth A. Ryan
BAILEY & GLASSER LLP
125 Summer Street
Suite 1030
Boston, MA 02110
(617) 439-6730

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 14-1048          **Caption:** Gardner v. Ally Financial, Inc. v. Manheim Remarketing

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [✓] this brief contains _____6,772_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [✓] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 [*identify word processing program*] in Times New Roman 14-point [*identify font size and type style*]; **or**

    [ ] this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Benjamin H. Carney

Attorney for Plaintiffs-Appellants

Dated: July 7, 2014

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July 2014, the foregoing brief was served to all counsel of record via CM/ECF.


/s/ Benjamin H. Carney_____